101 N.J. Super. 205 (1968)
243 A.2d 853
THEODORE KIRBY, PLAINTIFF,
v.
COLUMBIAN INSTITUTE, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Hudson County Court, Law Division.
Decided May 24, 1968.
*207 Mr. John J. Pagano for plaintiff.
Mr. P. Joseph Marley for defendant.
PINDAR, J.S.C.
The issue presented to the Court for its consideration comes before it on defendant's notice of motion for summary judgment, R.R. 4:58-1 et seq., which is supported with affidavits and briefs, all of which raise a question regarding statutory charitable immunity.
Concisely stated, the pertinent facts are that plaintiff Theodore Kirby was a paying patron of defendant's bowling alley and bar when on or about September 25, 1964, he was allegedly caused to slip and fall while bowling due to defendant's negligence in allowing spillage from drinks to accumulate in the bowling area.
Defendant Columbian Institute is a non-profit corporation organized according to its amended charter "to promote the mental and moral improvement of men, women and children." It was also authorized to purchase lands and erect theron a clubhouse or other buildings. According to the certified copy of defendant's charter, no one is eligible for membership in the Columbian Institute unless he is a member in good standing of the Knights of Columbus. Plaintiff is not a member of the Institute.
According to affidavit of John R. Bulwith, an officer of defendant, the Institute owns, maintains and controls a building at 667 Avenue C, and 67-69 West 30th Street, Bayonne, New Jersey, site of plaintiff's injuries. As part of the operation of the building, a bar and bowling alley are maintained and, as was conceded at oral argument, are open to the public. All "fees, monies or donations," received from the operation of the bowling and bar facilities (which operated *208 under a plenary retail liquor consumption license) become part of the general funds of the Institute, out of which funds the subject facilities are maintained, whether or not their receipts sustain their operations. The building contains other facilities of an undisclosed nature, although at oral argument reference was made to a reading room and banquet hall.
The defendant brings this motion asserting that it comes within statutory charitable immunity pursuant to N.J.S. 2A:53A-7 et seq., and therefore, plaintiff's cause of action is barred.
The motion was first argued to the Court with reference to plaintiff's status as beneficiary or stranger to the charity's works. See, N.J.S. 2A:53A-7. Upon review of the briefs and after consideration of the arguments, the Court directed counsel by its letter dated March 28, 1968, to re-brief and re-argue the motion on the question whether bowling and drinking promote the Institute's purpose as contained in its amended charter, and if not, the effect of the statute upon the question.
Keeping in mind the legislative directive that the statute in question is remedial and to be liberally construed to afford immunity, N.J.S. 2A:53A-10, the Court is nonetheless confronted by the legislature's choice of words in effecting its purpose. N.J.S. 2A:53A-7, in relevant part, reads:
"No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall * * *" (Emphasis added).
Webster's International Dictionary (2d Ed. 1950) defines "exclusive" in five different senses, but as used in the statute the only meaning appropriate to the Legislative purpose is the fourth, i.e., "* * * Single; sole * * *" Id. p. 890.
Reviewing the original and amended corporate charters filed with the Court it is noticed that in the original charter dated April 16, 1910, the purposes enumerated for the Institute contemplated activities to promote the "moral, social, *209 intellectual, material and physical welfare and advancement of its members; to purchase lands and to construct and erect thereon a clubhouse or other buildings * * * (Emphasis added).
It seems clear the Institute was not originally intended as a public charity, but rather it was intended to function like a fraternal association for members of the Knights of Columbus. Having altered its charter to broaden its purpose, i.e., "to promote the mental and moral advance of men, women and children," which for the present may be assumed to be charitable, why therefore, was the corporation to continue to maintain a clubhouse as one of its purposes? Clubhouses are for members only, and are not open to the public. A "public clubhouse" is a contradiction in terms, and certainly the incorporators did not intend so strained a construction of their charter. The more natural construction of the charter is that the institute was to function or to continue to function as a fraternal society for its members as well as to perform other services of a more public nature. It seems clear, therefore, that the Institute was organized for two purposes; one of which was charitable, and the other not charitable but rather mutually advantageous to club members. Of course it cannot be gainsaid that not every nonprofit corporation is charitable, 1 Fletcher, Cyc. Corporations, § 79, p. 361 (Perm. Ed. Rev. 1963); and those non-profit corporations which are not devoted solely and exclusively to religious, charitable, educational or hospital purposes, or to a combination of these permissible purposes, do not enjoy statutory charitable immunity. See, Gould v. Theresa Grotta Center, 83 N.J. Super. 169 (Law Div. 1964) affirmed, 89 N.J. Super. 253 (App. Div. 1965). Fraternal societies or those organizations whose purpose is to promote the welfare of their members are benevolent, but not charitable. 1 Fletcher, op. cit. § 79, at p. 367. And, therefore, the Court is constrained to hold that the Columbian Institute under the aforementioned amendment is not organized exclusively for charitable, religious, educational or *210 hospital purposes, and does not enjoy the immunity granted by N.J.S. 2A:53A-7 et seq. Because there is no longer any common law immunity outside the scope of the statute, see, Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958), the defendant must be held responsible for its torts on the same basis and for the same reasons as any other suable entity. See, R.S. 15:1-4(b); 16:1-4(b).
Although the conclusion above is by itself sufficient to deny defendant's motion for a summary judgment, the Court wishes to indicate to counsel its opinion regarding the question to which counsel addressed themselves at the Court's request upon re-briefing and re-argument, i.e., whether bowling and drinking promote the mental and moral improvement of men, women and children. The defendant argued that the mental and moral improvement of mankind are promoted by educational "pursuits" in a "controlled environment," and that the term "education," concededly of broad and indefinite conceptual limits, includes recreational activities as well as all forms of human experience. See Stoolman v. Camden County Council Boy Scouts of America, 77 N.J. Super. 129 (Law Div. 1962).
But it is precisely this last contention, i.e., that "life" is an educational experience, which although indubitably true, is nonetheless problematic for the Court in effectuating the legislative intent. If defendant's contention were accepted it would lead to the conclusion that every nonprofit organization was engaged in educational pursuits as a matter of law, and therefore all such corporations were immune from tort liability. But such an absurd result could not reasonably have been intended by the Legislature.
Although no New Jersey case seems to have considered the precise problem here involved, those jurisdictions which have seemed to adopt the rule that when an otherwise charitable or educational organization engages in commercial activities bearing no substantial and direct relation to its general charitable or educational purposes, such organization loses whatever immunity it would otherwise enjoy despite the *211 fact that the profits derived from the commercial activity are used for the organization's charitable purposes. See, the cases collected in 25 A.L.R.2d, 29 (1952) at 130; 15 Am. Jur.2d, Charities, § 169; 10 Fletcher, op cit., § 4937, at 848 (Perm. Ed Rev. 1961). The rule enunciated should be contrasted with those New Jersey cases which hold in part that charities do not lose their immunity by virtue of the fact that certain fees are charged for their charitable services, which holdings are not inconsistent with the rule stated above. See, e.g., Hauser v. Y.M.C.A., 91 N.J. Super. 172, at p. 177 (Law Div. 1966).
Reading the language of the statute, it seems clear that the Legislature never intended to allow charities or educational institutions to open a business with the obvious competitive advantage they would enjoy if they were immune from suits for their torts. The critical question in a legal anaylsis of the issues is one of characterization, i.e., is the questioned activity out of which the suit arises commercial or charitable in nature. See, Allison v. Mennonite Publications Board, 123 F. Supp. 23, at p. 28 (D.W.D. Pa. 1954).
In the present case the Court is of the opinion that operating a public bar and bowling alley for profit is clearly a commercial activity bearing no substantial and direct relation to the mental and moral improvement of men, women and children. This is not to say that the defendent has exceeded its corporate powers, a question not before the Court, but simply to assert that the defendant does not enjoy immunity by virtue of our statute when it operates a public bar and bowling alley.
The justice of the rule is to be found in several considerations. First, the Court will take judicial notice of the fact that there are a plethora of combination bar-bowling alleys in New Jersey which provide recreation to residents of our State for a profit. For the fees charged these enterprises assume a duty towards their patrons, that of landowner or proprietor to business invitee, one of the highest duties in the law. Compensation for torts committed by these commercial *212 establishments must be satisfied from the profits of the venture before any individual owner or shareholder receives his share of the net proceeds. This Court does not think that the Legislature intended a different treatment for charitable organizations which open to the public at comparable prices similar facilities whose necessary effect is to compete with other commercial enterprises.
Secondly, focusing upon the language of N.J.S. 2A:53 A-7, it is noticed that the Legislature has adopted the traditional beneficiary-stranger dichotomy as developed by the Courts as an exception to the judicially created charitable immunity. Therefore, it seems that the Legislature was simply reasserting, perhaps broadening, the common law immunity which prevailed until the Supreme Court overruled the theory in its entirety in the Collopy decision, supra. To this extent the statute is declaratory of the common law development in the Courts until 1958. See, Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, at pp. 535-536 (App. Div. 1962). But because there had been no case in New Jersey dealing with the present question at the time the legislation was enacted, the Legislature did not contemplate the present question when it preserved the common law immunity as expressed in the statute, and so the question is an open one. In the absence of the statute it is conjectural to conclude that the Supreme Court would have created a second exception to the general rule of charitable immunity, but in view of its later decision in Collopy it seems that the Court would have been favorably disposed to do so, in an appropriate case. See, Bell v. Salvation Army, 172 Ohio St. 326, 175 N.E.2d 738, 740 (Sup. Ct. 1961).
The Hauser v. Y.M.C.A. case, supra, cited by defendant is not inconsistent with this Court's general observations and opinions because there the Court specifically found as a matter of fact that "Its (Y.M.C.A.'s) fees do not begin to cover the entire cost of operating its extensive facilities, and so it turns to fund raising to carry out its major purpose * * *" 91 N.J. Super., at p. 178. This Court points out *213 that its present opinion is based upon the fact that this charity is operating a profit making business.
Thirdly, buttressing this Court's conclusion, attention is directed to the statutory language, specifically to N.J.S. 2A:53A-10, wherein the Courts are directed to construe the statute to the end that charities may be protected. From what should charities be protected? The only responsive answer is "depletion of their trust funds." That is the principal purpose of the legislation. But when a charity is required to compensate the victims of their torts committed in the course of profit making commercial activities, the charity's trust funds are not depleted if as a cost of doing business the charity is required to compensate their victims from their profits before they are committed to more general purposes. Construing the statute as a whole with this legislatively declared policy in mind, there is no judicial frustration of the statute's purpose if charities are made answerable for their torts committed while engaged in a profit making venture.
In the light of the foregoing, it is determined that defendant's motion will be denied. On the basis of the stated conclusion the issue of plaintiff's status as a beneficiary is irrelevant and determination thereof becomes unnecessary.