SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Terry Kuchera v. Jersey Shore Family Health Center (A-60-13) (073483)**

**Argued December 2, 2014 -- Decided March 31, 2015**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal concerning a premises liability action, the Court addresses whether a health care facility is entitled to charitable immunity pursuant to N.J.S.A. 2A:53A-7, or the limited liability afforded to nonprofit entities organized exclusively for hospital purposes pursuant to N.J.S.A. 2A:53A-8.

On Saturday, March 7, 2009, plaintiff attended a free eye screening conducted by the New Jersey Commission for the Blind and Visually Impaired (Commission) at the Jersey Shore Family Health Center (Family Health Center). After registering for her screening, plaintiff slipped and fell on the tile floor. As a result, plaintiff allegedly sustained injuries, including a torn ligament in her ankle, and herniated and bulging discs in her back.

The Family Health Center is a nonprofit charitable clinic in the Meridian Health hospitals system. It is located in Neptune in a separate building next to the Jersey Shore University Medical Center (Medical Center). The Family Health Center provides medical care for those "who are uninsured, underinsured, without a primary care physician and/or who lack access to regular medical care." The Medical Center, a 600-bed hospital, is one of six hospitals that comprise the Meridian Health system. The Medical Center provides a spectrum of specialized care including cardiac, oncology, behavioral health, and pediatrics, and conducts several residency programs. Meridian Health and its constituent hospitals were organized as a nonprofit organization within the meaning of Section 501(c)(3) of the Internal Revenue Code. Meridian Health was organized, generally, to operate hospitals and health care facilities, to promote or carry on educational and research activities, to render necessary health care regardless of the patient's ability to pay, and to promote and protect the health and welfare of the general public.

Plaintiff filed a complaint against the Family Health Center, the Medical Center, Meridian Health, and Modern Health Realty, the record owner of the property (collectively the Meridian Health defendants), seeking compensatory damages for her injuries. An initial motion for summary judgment was denied, but, on the day of trial, the Meridian Health defendants renewed their motion, and the trial judge conducted a hearing focused on the Medical Center's status. Noting that the central issue was whether the entity is organized exclusively for hospital purposes or for religious, educational, and/or hospital purposes, the court determined that the Medical Center has a hybrid purpose that includes educational and charitable services as well as the operation of a hospital. The court, therefore, concluded that the Meridian Health defendants are entitled to the absolute immunity conferred on certain charitable organizations by N.J.S.A. 2A:53A-7, and dismissed plaintiff's complaint with prejudice.

The Appellate Division affirmed in an unpublished decision. The panel accepted the hybrid purpose analysis, concluding that "in addition to maintaining a hospital, defendants also provide the beneficial services listed in [N.J.S.A. 2A:53A-7] and are, therefore, not engaged solely in hospital functions to the exclusion of educational and charitable purposes." The Court granted plaintiff's petition for certification. 217 N.J. 287 (2014).

**HELD:** The site of plaintiff's fall was part of a nonprofit health care corporation organized exclusively for hospital purposes. Defendants, therefore, are not entitled to absolute immunity, but rather are entitled to the limitation of damages afforded to nonprofit institutions organized exclusively for hospital purposes.

1. The Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11 (CIA or the Act), provides immunity for certain charitable institutions. However, the Legislature's codification of charitable immunity was not universal: certain personnel were not immune from liability for negligence, and nonprofit hospitals were granted a cap on damages from liability for negligence rather than immunity. N.J.S.A. 2A:53A-7 to -13.1. (pp. 9-10).

1

2. To emphasize the distinction between certain entities, the CIA addressed nonprofits organized exclusively for charitable, religious, or educational purposes, and those organized for hospital purposes in separate sections. N.J.S.A. 2A:53A-7 and -8. The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are immune from liability, N.J.S.A. 2A:53A-7(a), while the latter are subject to liability for negligence, albeit with a cap on its damages, N.J.S.A. 2A:53A-8. The immunity bestowed by the CIA extends to the buildings and other facilities actually used for the purposes of the qualifying organization, such as a hospital. N.J.S.A. 2A:53A-9. Further, N.J.S.A. 2A:53A-10 instructs that the CIA is remedial legislation and should be liberally construed so as to further the legislative purpose of immunity. (pp. 11-12)

3. By the plain language of N.J.S.A. 2A:53A-7 and -8, a hospital is subject to limited liability under section 8 if it is formed as a nonprofit corporation, society, or association, is organized exclusively for hospital purposes, was promoting those objectives and purposes at the time the plaintiff was injured, and the plaintiff was a beneficiary of the activities of the hospital. Thus, this appeal is confined to the issue of whether the free eye screening conducted at the Family Health Center can be considered a hospital purpose. (pp. 13-14)

4. Few cases have addressed the phrase "organized exclusively for hospital purposes" in the context of the CIA. To begin, the term "exclusively" used in sections 7 and 8 of the CIA has been interpreted as meaning single or sole. Recently, the Court discussed the meaning of the phrase "organized exclusively for hospital purposes" in the context of considering whether an offsite facility owned and operated by a nonprofit hospital was exempt from local property taxation. Hunterdon Med. Ctr. v. Twp. of Readington, 195 N.J. 549 (2008). There the Court stated that "the core aspects of a hospital's purposes are to address the needs of all of the types of patients that a hospital is expected to serve," and further held that the site of the delivery of the service does not detract from its inclusion as a hospital purpose. Id. at 572. Thus, as recognized by the courts of this State and courts around the country, the modern hospital is a place where members of the community not only seek emergency services but also preventative services, therapy, educational programs, and counseling, and the conception of "hospital purposes" must expand to reflect the many health-related pursuits of the modern hospital. Accordingly, to advance the legislative mandate that the CIA be liberally construed to effectuate its purpose, the Court focuses on the many medical pursuits of a modern New Jersey hospital. (pp. 14-18)

5. Whether a nonprofit entity, whose certificate of incorporation and by-laws provide that it is organized exclusively for charitable, religious, educational, or hospital purposes, actually conducts its affairs consistent with its stated purpose often requires a fact-sensitive inquiry. After reviewing the principles applicable to a modern hospital, the Court concludes that the Meridian Health defendants, and specifically the Medical Center and its Family Health Center, are governed by the more specific expressions of legislative intent regarding hospitals articulated in N.J.S.A. 2A:53A-8. Thus, the Meridian Health defendants are subject to liability for negligence applicable to nonprofit corporations, associations, and societies organized exclusively for hospital purposes with any damage award capped at $250,000. The Appellate Division's judgment to the contrary – specifically that the Meridian Health defendants were immune from liability pursuant to N.J.S.A. 2A:53A-7 – utilized a restrictive concept of a hospital that did not account for the multi-function nature of the modern hospital and its role in the provision of health care in this society. (pp. 19-23)

The judgment of the Appellate Division is **REVERSED,** and the matter is **REMANDED** to the trial court for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA and SOLOMON join in JUDGE CUFF's opinion.**

2

TERRY KUCHERA,

    Plaintiff-Appellant,

        v.

JERSEY SHORE FAMILY HEALTH
CENTER, JERSEY SHORE
UNIVERSITY MEDICAL CENTER,
MERIDIAN HEALTH and MODERN
REALTY CORPORATION,

    Defendants-Respondents.

        Argued December 2, 2014 – Decided March 31, 2015

        On certification to the Superior Court,
        Appellate Division.

        Steven L. Kessel argued the cause for
        appellant (Drazin & Warshaw, attorneys).

        Richard A. Amdur argued the cause for
        respondents (Amdur, Maggs & Shor,
        attorneys).

    JUDGE CUFF (temporarily assigned) delivered the opinion of

the Court.

    This is a premises liability case. Plaintiff slipped and

fell on a wet spot on a floor in an outpatient health care

facility owned and operated by a nonprofit hospital.

    The issue before this Court is whether the health care

facility is entitled to charitable immunity pursuant to N.J.S.A.

2A:53A-7, or the limited liability afforded to nonprofit

1

entities organized exclusively for hospital purposes pursuant to N.J.S.A. 2A:53A-8.

The fall occurred while plaintiff Terry Kuchera was attending a free eye screening offered by the New Jersey Commission for the Blind and Visually Impaired (Commission) held at a family health care facility of a regional teaching hospital. Plaintiff filed a complaint seeking compensatory damages for injuries sustained in the fall. Summary judgment was granted in favor of the hospital pursuant to N.J.S.A. 2A:53A-7, which grants immunity from negligence actions to nonprofit entities organized exclusively for charitable, educational, or religious purposes. The Appellate Division affirmed, rejecting plaintiff's argument that the health care entity that owned and operated the clinic facility was "organized exclusively for hospital purposes," and, therefore, is entitled to the protections of N.J.S.A. 2A:53-8, which exposes such entities to actions for negligence but caps the amount of damages that may be awarded to a successful plaintiff. The panel held that the parent-hospital's provision of charity care and medical education rendered the hospital a hybrid nonprofit institution organized exclusively for charitable and educational purposes. It concluded that the hospital was accordingly immune from liability for negligence pursuant to section 7 of the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -

2

11 (CIA or the Act), rather than subject to a cap on damages for negligence pursuant to section 8 of that statute.

Whether a nonprofit organization is entitled to charitable immunity or subject to the limitation on damages afforded to those institutions organized exclusively for hospital purposes turns on the purpose of the institution, not the use to which the facility is put on any given day. Here, the site of plaintiff's fall was part of a nonprofit health care corporation organized exclusively for hospital purposes. Defendants therefore are not entitled to absolute immunity for a lack of due care in the maintenance of their facility. Rather, they are entitled to the limitation of damages afforded to those nonprofit institutions organized exclusively for hospital purposes. We reverse the Appellate Division judgment that affirmed entry of summary judgment in favor of the hospital.

I.

On Saturday, March 7, 2009, plaintiff attended a free eye screening conducted by the Commission. The screening was conducted at the Jersey Shore Family Health Center (Family Health Center). The staff, who conducted and assisted the eye screening clinic, was composed of Commission representatives, as well as Family Health Center employees serving as volunteers.

After Kuchera arrived at the Family Health Center, she went to an office to register for the screening. As she left the

3

office to return to the waiting room, Kuchera fell on the tile floor.  She reported that she slipped on an oily substance, and asserts that one of the nurses pointed to nearby paper towels and said, "oh, I was going to clean it up in a minute."  As a result of the fall, Kuchera alleges that she injured her left hip and knee, her shoulder, wrist, and neck, and suffered a torn ligament in her ankle, and herniated and bulging discs in her lower back.

The Family Health Center is a nonprofit charitable clinic in the Meridian Health hospitals system.  It is located next to the Jersey Shore University Medical Center (Medical Center) in a separate building.  According to a vice president of the Medical Center, the Family Health Center provides medical care for those "who are uninsured, underinsured, without a primary care physician and/or who lack access to regular medical care."

The Medical Center is one of six hospitals that comprise the Meridian Health system.  The Medical Center is a 600-bed hospital located in Neptune and associated with several satellite facilities, including the Family Health Center.  The Medical Center provides a spectrum of specialized care including cardiac, oncology, behavioral health, and pediatrics, and conducts several residency programs.  Meridian Health and its constituent hospitals were organized as a nonprofit organization within the meaning of Section 501(c)(3) of the Internal Revenue

4

Code.  According to Meridian Health's 1998 certificate of incorporation, they were organized for the following purposes:

> (a) To establish, maintain and operate one or more hospitals and other health care facilities for the treatment and care of the sick, injured and disabled without regard to race, sex, age, creed, national origin, ancestry, marital status, sexual orientation, family status or handicap.
>
> (b) To promote and carry on, by itself or together with others, directly or through other entities in which it has an interest or in which it participates, such other hospital, health care, educational and research activities related to its said purpose as the Board of Trustees may determine to be in the best interests of the general public health in the communities which it serves.
>
> (c) To render necessary health care and related services to all who require such care regardless of their ability to pay and to promote, improve and protect the health and welfare of the general public in the Communities served by [Meridian Health].
>
> (d) To carry out such other acts and to undertake such other activities as may be necessary, appropriate or desirable in furtherance of, or in connection with, or complementary to the conduct, promotion or attainment of the foregoing purposes.[1]

II.

Kuchera filed a complaint against the Family Health Center, the Medical Center, Meridian Health, and Modern Health Realty,

---

[1] Meridian Health's 2010 restated certificate of incorporation reiterates essentially the same purposes.

5

the record owner of the property (collectively referred to as the Meridian Health defendants).[2] She alleged that she was injured when she slipped on the floor at the Family Health Center.

An initial motion for summary judgment was denied. On the day of trial, the Meridian Health defendants renewed their motion for summary judgment. The trial judge conducted an evidentiary hearing focusing on the status of the Medical Center. A Medical Center vice president testified that the event at the Family Health Center was a Commission-sponsored eye screening and that the people who worked at the event were Commission employees or volunteers. He described the Family Health Center as a community outreach clinic that provides free care to community members. In response to a question posed by the trial judge, the Medical Center representative stated that the Medical Center is the academic teaching hospital in the Meridian Health system and is affiliated with Robert Wood Johnson University Medical Center and the University of Medicine and Dentistry of New Jersey. The trial judge asked whether "it [is] fair to say that a fundamental component of the corporation or purpose of the corporation is educational purposes?" The

---

[2] The complaint against Modern Health Realty was dismissed for failure to prosecute, and an amended complaint added Kleen Rite Corporation as a defendant.

Medical Center representative responded affirmatively, citing the numerous residency programs based at the hospital that train medical students and newly graduated physicians.

Noting that the central issue was whether the entity itself, not the building that it owns, is organized exclusively for hospital purposes or for religious, educational, and/or hospital purposes, the trial judge determined that the Medical Center has a hybrid purpose that includes educational and charitable services as well as the operation of a hospital. The judge therefore concluded that the Meridian Health defendants are entitled to absolute immunity conferred on certain charitable organizations by N.J.S.A. 2A:53A-7, and dismissed plaintiff's complaint with prejudice.

In an unpublished opinion, the Appellate Division affirmed. The panel accepted the hybrid purpose analysis of the trial judge. It concluded that "the undisputed proofs demonstrate that, in addition to maintaining a hospital, defendants also provide the beneficial services listed in [N.J.S.A. 2A:53A-7] and are, therefore, not engaged solely in hospital functions to the exclusion of educational and charitable purposes." In addition, it concluded that the term "educational purposes" should be interpreted broadly, extending beyond mere scholarly pursuits. Citing the various residency programs and offsite facilities providing medical education and training, the panel

7

determined that the Medical Center "has a clear mission to promote the educational development of future physicians, and provides educational services through a variety of platforms."

Furthermore, the panel concluded that the Medical Center was organized for "charitable purposes," based on the interpretation of N.J.S.A. 54:4-3.6, as adopted by Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 284 (1970). As support, the panel cited the charitable health clinics operated by the Medical Center.

This Court granted plaintiff's petition for certification. Kuchera v. Jersey Shore Family Health Ctr., 217 N.J. 287 (2014).

III.

Plaintiff argues that N.J.S.A. 2A:53A-8 expresses the intent of the Legislature regarding a hospital's liability for negligence to a beneficiary of its services. She contends that the Legislature expressly addressed charitable immunity for those nonprofit entities organized exclusively for hospital purposes and rejected the application of absolute charitable immunity to them. Rather, plaintiff argues that the Legislature declared that nonprofit entities organized exclusively for hospital purposes are not immune from suit by a person injured as a result of its negligence. She notes that the Legislature imposed a cap on damages recognizing the financial impact of unlimited monetary damage awards on qualifying hospitals.

8

Furthermore, she urges this Court to recognize that hospital purposes include teaching and operating community health clinics for those unable to pay for medical care.

Defendants urge this Court to affirm the analysis of the Appellate Division. They contend that the factual record demonstrates that the Medical Center is neither organized nor operated exclusively for hospital purposes. Furthermore, defendants urge that the immunity analysis should focus on the function or use of the facility at the time the negligent act occurred on its premises. They contend that defendants "were not engaged in providing medical treatment, clinical instruction or in operating an outpatient clinic at the time of plaintiff's injury. Instead, the activity was the purely charitable one of lending the Family Health Center facility to an unrelated entity . . . to conduct a charitable event, the free eye-screening."

IV.

A.

Prior to 1958, the common law recognized charitable immunity for charitable institutions such as churches and hospitals. See Bianchi v. S. Park Presbyterian Church, 123 N.J.L. 325, 330-32 (E. & A. 1939) (recognizing common law principle of charitable immunity as bar to negligence actions against church by recipient of its benefactions); D'Amato v. Orange Mem'l Hosp., 101 N.J.L. 61, 65 (E. & A. 1925) (holding

9

that public policy requires immunity from liability of charitable institution maintaining hospital for negligent acts of medical personnel even for paying patients).  That principle was discarded by this Court in <u>Benton v. Young Men's Christian Ass'n of Westfield</u>, 27 <u>N.J.</u> 67 (1958); <u>Collopy v. Newark Eye & Ear Infirmary</u>, 27 <u>N.J.</u> 29 (1958); and <u>Dalton v. St. Luke's Catholic Church</u>, 27 <u>N.J.</u> 22 (1958).  The Legislature promptly responded by passing the CIA to restore charitable immunity.  <u>See</u> <u>Lawlor v. Cloverleaf Mem'l Park, Inc.</u> 56 <u>N.J.</u> 326, 336 (1970); <u>L.</u> 1959, <u>c.</u> 90 (codified as <u>N.J.S.A.</u> 2A:53A-7 to -11).[3] The CIA serves two primary purposes.  First, immunity preserves a charity's assets.  <u>O'Connell v. State</u>, 171 <u>N.J.</u> 484, 496 (2002).  Second, immunity recognizes that a beneficiary of the services of a charitable organization has entered into a relationship that exempts the benefactor from liability.  <u>Ibid.</u>

Generally stated, the restoration of charitable immunity was not universal.  The legislative scheme imposes certain conditions: certain personnel were not immune from liability for negligence, and nonprofit hospitals were granted a cap on damages from liability for negligence rather than immunity.

---

[3] Subsequent amendments provide that members of volunteer public assistance squads, such as volunteer first aid personnel and volunteer fire personnel are immune from liability for acts or omissions arising out of and in the course of rendering first aid or emergency services.  <u>N.J.S.A.</u> 2A:53A-12 to -13.1.

N.J.S.A. 2A:53A-7 to -13.1.  To emphasize the distinction between certain entities, the CIA addressed nonprofits organized exclusively for charitable, religious, or educational purposes, and those organized for hospital purposes in separate sections. N.J.S.A. 2A:53A-7 and -8.  The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are immune from liability while the latter are subject to liability for negligence, albeit with a cap on its damages.

Specifically, N.J.S.A. 2A:53A-7(a) grants immunity from liability for negligence to nonprofit corporations, societies, or associations organized exclusively for religious, charitable, or educational purposes.  It provides:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association[.]
>
> [N.J.S.A. 2A:53A-7(a).]

By contrast, N.J.S.A. 2A:53A-8 provides that

11

> [n]otwithstanding the provisions of [N.J.S.A. 2A:53A-7], any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000,[4] together with interest and costs of such suit[.]

The immunity bestowed by the CIA extends to the buildings and other facilities actually used for the purposes of the qualifying organization, such as a hospital. N.J.S.A. 2A:53A-9. Section 9 provides in relevant part that, "[f]or the purposes of this act but not in limitation thereof, the buildings and places actually used for [educational purposes,] . . . religious worship, charitable or hospital purposes, . . . when so operated and maintained by any such nonprofit corporation, society or association, shall be deemed to be operated and maintained for a . . . hospital purpose." Finally, N.J.S.A. 2A:53A-10 instructs that the CIA is remedial legislation and should be liberally construed so as to further the legislative purpose of immunity.

B.

Plaintiff contends that the Family Health Center is an integral part of the health care provided by defendant Medical Center. She argues that providing educational programs and

---

[4] Initially, the Legislature capped damages at $10,000. L. 1959, c. 90, ¶ 48.

12

services related to health and operating neighborhood health clinics without regard to ability to pay for the provided services fall within the term "hospital purposes."  The Meridian Health defendants contend that the Family Health Center engages in activities that stray beyond the stated purpose of a hospital.  Defendants claim that, having ventured into charitable activities, albeit health-related, those activities cloak defendant hospital with the immunity afforded to nonprofit charitable organizations.  The Appellate Division determined that defendant hospital was not organized exclusively for hospital purposes but was actually a hybrid hospital and charitable institution due to its public health and educational offerings.  The panel concluded that hybrid status afforded defendant hospital complete immunity from liability under the CIA.

By the plain language of N.J.S.A. 2A:53A-7 and -8, a hospital is subject to limited liability under section 8 if it is formed as a nonprofit corporation, society, or association, is organized exclusively for hospital purposes, was promoting those objectives and purposes at the time the plaintiff was injured, and the plaintiff was a beneficiary of the activities of the hospital.  Cf. Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 95 (2006).  This appeal is confined to the issue of whether

13

the free eye screening conducted at the Family Health Center can be considered a hospital purpose.

We have identified few cases that address the phrase "organized exclusively for hospital purposes" in the context of the CIA, and those cases shed little, if any, light on the issue presented in this appeal. The term "exclusively" used in sections 7 and 8 of the CIA has been interpreted as meaning single or sole. Kirby v. Columbian Inst., 101 N.J. Super. 205, 208 (Cty. Ct. 1968). There, the trial court held that a fraternal organization, that was at least partially organized to promote the welfare of its members, was not afforded the shelter of charitable immunity because it was not exclusively or solely organized for charitable purposes. Id. at 209-10.

In Gould v. Theresa Grotta Center, 83 N.J. Super. 169, 174-75 (Law Div. 1964), aff'd, 89 N.J. Super. 253 (App. Div. 1965), a trial judge strictly interpreted the term organized "exclusively for hospital purposes" and refused to consider a nursing home as a qualifying entity, notwithstanding the provision of some incidental health care to its residents. The judge further determined that an entity organized for hospital purposes "must necessarily import an absence of the additional charitable and beneficial functions of a nursing home." Id. at 176.

14

Recently, the Court discussed the meaning of the phrase "organized exclusively for hospital purposes" in Hunterdon Medical Center v. Township of Readington, 195 N.J. 549 (2008). The discussion arose in the context of whether an offsite facility owned and operated by a nonprofit hospital was exempt from local property taxation. We recognize that whether real property and improvements thereon are exempt from local property taxation and whether an entity satisfies the criteria for immunity from liability for negligence implicate different statutory provisions and public policy concerns. Nevertheless, the view expressed by this Court regarding the organization and role of a modern hospital is instructive.

The Court observed that any analysis of the meaning and scope of "hospital purposes must take into consideration the many medical pursuits permitted to the 'modern' hospital in New Jersey." Id. at 553. It emphasized that the analysis of the term "hospital purposes" starts with the accepted concept of a hospital as "a place where a patient can obtain twenty-four hour continuous care." Id. at 569.

However, the Court's analysis did not end there. Concluding that confining the definition of hospital to a twenty-four hour continuous care facility for an inpatient population ignores the larger role of a hospital "as an expected and, to be sure, legitimate, provider of numerous patient

15

services," the Court stated that the analysis must focus on the core aspects of a hospital's purposes. Id. at 572. The Court stated that

> the core aspects of a hospital's purposes are to address the needs of all of the types of patients that a hospital is expected to serve. Therefore, we hold that any medical service that a hospital patient may require pre-admission, during a hospital stay (whether it is for less than a day or for one or more days), or post-admission, constitutes a presumptive core "hospital purpose" under N.J.S.A. 54:4-3.6. Our definition amplifies the more abbreviated explanation of "hospital purposes" previously articulated in connection with N.J.S.A. 54:4-3.6 applications.
>
> [Ibid.]

The Court also held that the site of the delivery of the service did not detract from its inclusion as a hospital purpose. Ibid. Thus, if the service was delivered in a facility on the main campus or in a hospital-owned building adjacent to the hospital campus, "[t]he use is presumptively for core 'hospital purposes.'" Ibid.

Indeed, in various contexts, courts throughout the country have recognized the evolving character of hospitals and healthcare. A hospital is no longer viewed as simply a facility at which medical professionals treat their patients. See Clark v. Southview Hosp. & Family Health Ctr., 628 N.E.2d 46, 53 (Ohio 1994) (explaining courts have recognized "the status of the

16

modern-day hospital and its role in contemporary society" as "the only place where the best equipment and facilities and a full array of medical services are available at any time without an appointment.  With hospitals now being complex full-service institutions, the emergency room has become the community medical center, serving as the portal of entry to the myriad of services available at the hospital"); Burless v. W. Va. Univ. Hosps., Inc., 601 S.E.2d 85, 93 (W. Va. 2004) (noting "[t]he public's confidence in the modern hospital's portrayal of itself as a full service provider of health care"); Lewis v. Physicians Ins. Co., 627 N.W.2d 484, 493 (Wis. 2001) ("As full-care modern health facilities, hospitals are no longer mere structures where physicians treated and cared for their patients." (internal quotation marks and citation omitted)).

The modern hospital is now a place where members of the community not only seek emergency services but also preventative services, therapy, educational programs, and counseling.  For instance, New Jersey supports several "Quit Centers," which operate in some hospitals across the State and provide a number of services to help residents quit smoking.[5]

---

[5] NJ Quit Centers, New Jersey HealthLink, http://www.nj.gov/njhealthlink/addict/quitcenters.html?pageID=NJ (last visited Feb. 23, 2015).

Similarly, many hospitals, including the Medical Center, provide specialized and comprehensive services pertaining to particular diseases, such as diabetes.  One major hospital operates an education center for adults and children, which provides inpatient and outpatient diabetes care, educational programs certified by the American Diabetes Association, individual diabetes counseling, nutritional counseling, and psychosocial support services through a licensed clinical social worker.  As these programs illustrate, hospitals now provide comprehensive services beyond acute inpatient care, and our conception of "hospital purposes" needs to expand to reflect the many health-related pursuits of the modern hospital.

We discern no reason to confine the term "hospital purposes" to the vintage conception of a hospital as a facility providing a site for physicians to provide acute and continuous inpatient care for their patients.  Rather, to effectuate the legislative mandate that the CIA should be liberally construed to effectuate its purpose, we focus on the many medical pursuits of a modern hospital in New Jersey.

C.

Whether a nonprofit entity, whose certificate of incorporation and by-laws provide that it is organized exclusively for charitable, religious, educational, or hospital purposes, actually conducts its affairs consistent with its

18

stated purpose often requires a fact-sensitive inquiry. Bieker v. Cmty. House of Moorestown, 169 N.J. 167, 175 (2001). The Court recognized in Bieker that some nonprofit associations, such as churches, provide a wide range of services beyond their core purpose. Id. at 176. The Court embraced the idea that a church may engage in various activities and services and that its status as a nonprofit corporation or association organized exclusively for religious purposes is not eviscerated as long as the services or activities further the charitable objectives the church was organized to advance. Ibid. (citing Loder v. St. Thomas Greek Orthodox Church, 295 N.J. Super. 297, 302 (App. Div. 1996)); accord Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333, 349 (2003) (noting ancillary services that enhance mission of qualifying entity do not undermine exclusivity of qualifying entity's purpose); Estate of Komninos v. Bancroft Neurohealth, Inc., 417 N.J. Super. 309, 320 (App. Div. 2010) (recognizing nonprofit organizations are afforded wide latitude to determine how they shall achieve their stated objective). Applying that approach to the defendant, a community house organized and maintained "as a center of community life for the people of Moorestown and its surrounds," the Court held that it served a recognized charitable purpose. Bieker, supra, 169 N.J. at 177. The Court remanded, however, to determine the quantity of income received from its rental of

19

facilities to for-profit entities and whether that share of its income required a finding that the community organization lost its charitable status.  Id. at 179-80.

V.

Defendant Medical Center is a member of Meridian Health, which is a nonprofit corporation organized to engage in a series of activities relating to the improvement of human health and the provision of care to the sick, injured, and disabled.  To that end, Meridian Health and its constituent medical centers engage in educational and research programs and coordinate, sponsor, promote, and advance activities to improve the physical health and welfare of persons living in and around the geographic area it serves.  Notably, Meridian Health views its core hospital mission as providing not only inpatient but also outpatient medical care.  It also identifies its core hospital mission as addressing the public health needs of the community in which its constituent units are located.

The record reveals that the Family Health Center is a nonprofit, charitable ambulatory care facility located on the main campus of the Medical Center in Neptune.  It is an integral unit of the Meridian Health system.  It provides numerous specialized free clinics to the community.  The eye screening offered by the Commission at the Family Health Center attended

20

by plaintiff was an example of the clinics offered by this facility.

The modern hospital in New Jersey offers a variety of inpatient and outpatient services.  Some of the outpatient services, as discussed in Hunterdon Medical Center, supra, are related to medical services that will be administered on an inpatient basis in the acute care hospital facility.  195 N.J. at 554.  Some services, however, will be offered on an outpatient ambulatory basis because the medical service need not be performed on an inpatient basis or the medical service is in the nature of preventative care.  The delivery of such services in an outpatient setting is consistent with the nature of modern health care and a hospital's role as a facility that engages in care for more than the acutely ill or injured person.

The modern hospital in New Jersey may also include a teaching component.  The education of medical students, physicians, nurses, and other health professionals is a significant core hospital purpose related to the provision of quality health care to patients.  The modern hospital in New Jersey also provides medical care to those who can pay for the care and to those who cannot.  In fact, every acute care hospital in this State is required to provide care to anyone who seeks care without regard to the ability to pay.  N.J.S.A.

21

26:2H-18.64. The provision of charity care is a core function of a hospital.

Applying these principles, we conclude that the Meridian Health defendants, and specifically the Medical Center and its Family Health Center, are governed by the more specific expressions of legislative intent regarding hospitals articulated in N.J.S.A. 2A:53A-8. In short, the Meridian Health defendants are subject to liability for negligence applicable to nonprofit corporations, associations, and societies organized exclusively for hospital purposes with any damage award capped at $250,000. Ibid. Here, the Appellate Division utilized a restrictive concept of a hospital that did not account for the multi-function nature of the modern hospital and its role in the provision of health care in this society. By focusing on the use of a facility on any given day, the panel failed to consider the relationship of that single activity to the central organizing principles of the hospital. In addition, the panel misapprehended the role that public health activities -- such as eye screenings, provision of health care without consideration of the patient's ability to pay, and educational programs for health professionals -- play in advancing the core organizing purposes of the modern hospital.

We recognize that charitable immunity has historically been considered a means to conserve assets of the qualifying entity.

22

It is therefore significant that when the Legislature raised the cap on damages, it did so believing that additional monetary exposure for negligent acts might encourage heightened oversight of the quality of care thereby reducing incidents of medical malpractice and containing the costs of care. See Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 384 (App. Div. 1992) (holding 1991 amendment should be applied prospectively), aff'd, 131 N.J. 400 (1993). In premises liability actions, such as this one, any concerns that this ruling may sap nonprofit hospital resources is ameliorated by the opportunity of the organization to obtain indemnification from those entities with which the hospital contracts to maintain its facilities.

We, therefore, conclude that the Appellate Division incorrectly held that the Meridian Health defendants were immune from liability pursuant to N.J.S.A. 2A:53A-7.

VI.

The judgment of the Appellate Division is reversed and the matter is remanded for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUDGE CUFF's opinion.

23

SUPREME COURT OF NEW JERSEY

NO. __A-60__                    SEPTEMBER TERM 2013

ON CERTIFICATION TO ___Appellate Division, Superior Court___


TERRY KUCHERA,

      Plaintiff-Appellant,

         v.

JERSEY SHORE FAMILY HEALTH
CENTER, JERSEY SHORE
UNIVERSITY MEDICAL CENTER,
MERIDIAN HEALTH and MODERN
REALTY CORPORATION,

      Defendants-Respondents.


DECIDED _____March 31, 2014_____
       ___Chief Justice Rabner___    PRESIDING
OPINION BY _____Judge Cuff_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1