**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4550-17T1

MARGARET GRYGER,

     Plaintiff-Appellant,

v.

PERKINS CENTER FOR
THE ARTS, and TOWNSHIP
OF MOORESTOWN,

     Defendant-Respondents.

_____

Argued September 23, 2019 – Decided October 24, 2019

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0791-16.

Joseph Daniel Cronin argued the cause for appellant (Cronin Trial Lawyers, attorneys; Joseph Daniel Cronin, on the brief).

Roberto K. Paglione argued the cause for respondent Perkins Center for the Arts (Law Offices of Terkowitz & Hermesmann, attorneys; Roberto K. Paglione, on the brief).

PER CURIAM

Plaintiff Margaret Gryger appeals the April 27, 2018 Law Division order granting summary judgment dismissal of her tort claim against defendant Perkins Center For the Arts (PCA) pursuant to the New Jersey Charitable Immunity Act (the Act), N.J.S.A. 2A:53A-7 to -12. Gryger claimed she was injured due to PCA's negligence when she tripped and fell while descending a stairway at PCA's facility to attend to a pottery class operated by PCA for which she paid a fee. She argues the Act's immunity does not apply to her claim because she was not a beneficiary of PCA's charitable activities. For the reasons that follow, we conclude the Act applies to Gryger's claims and immunizes PCA from her suit, and thus, under our de novo standard of review, summary judgment was properly granted.

I

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Thus, we consider, as the motion judge did, "whether 'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational

A-4550-17T1

factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Holmes v. Jersey City Police Dep't, 449 N.J. Super. 600, 602-03 (App. Div. 2017) (citation omitted) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Accordingly, "a trial court's determination of the applicability of charitable immunity is reviewed de novo because an organization's right to immunity raises questions of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (Green II) (citing Estate of Komninos v. Bancroft Neurohealth, Inc., 417 N.J. Super. 309, 318 (App. Div. 2010)).

Our Supreme Court recently recounted the history of charitable immunity in New Jersey:

> New Jersey's doctrine of charitable immunity was first declared "as a judicial expression of [New Jersey's] public policy" in D'Amato v. Orange Mem['l] Hosp[.], but was expressly repudiated by this Court in Collopy v. Newark Eye & Ear Infirmary, as lacking historical

A-4550-17T1

foundation and contrary to "modern concepts of justice."

The Legislature immediately responded by passing a precursor to the Charitable Immunity Act and, a year later, the Act itself. Through that legislation, "'the common law doctrine as it had been judicially defined by the courts of this State' was restored."

The Charitable Immunity Act's "original purpose was to avoid the diversion of charitable trust funds 'to non-charitable purposes in order to live up to the reasonable expectations of the benefactors.'" "Over time, however, our case law has recognized that the purposes underlying charitable immunity are broader than simply preserving charitable trust funds and include the encouragement of altruistic activity" by limiting the economic impact of litigation on charities.

[Green II, 237 N.J. at 529-30 (citations omitted).]

The Act provides that

[n]o nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall . . . be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association[.]

[N.J.S.A. 2A:53A-7(a).]

The Legislature directed that the Act

4

shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes.

[N.J.S.A. 2A:53A-10.]

Nonetheless, "[o]nly those classes of entities that were immunized under common law remain within the sweep of the Act. However, as to those entities, the several provisions of the Act should be liberally construed to afford immunity." Tonelli v. Bd. of Educ. of Wyckoff, 185 N.J. 438, 444 (2005); see also Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 98 (2006) ("[A]lthough N.J.S.A. 2A:53A-10 states that the [Act] 'shall be liberally construed,' we must consider the scope of that common law when interpreting the scope of the immunities provided in the statute.").

"Charitable immunity is an affirmative defense, as to which, like all affirmative defenses, defendants bear the burden of persuasion." Abdallah v. Occupational Ctr. of Hudson Cty., Inc., 351 N.J. Super. 280, 288 (App. Div. 2002). An entity seeking charitable immunity must establish that it "(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and

purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." Tonelli, 185 N.J. at 444-45 (quoting Hamel v. State, 321 N.J. Super. 67, 72 (App. Div. 1999)).

## II

PCA's summary judgment motion contended it was entitled to immunity under the Act because Gryger was injured when receiving the benefit of its charitable activities that were consistent with its charitable mission "to provide arts and cultural opportunities to persons of all ages and abilities through visual and performing arts classes . . . ." Gryger opposed, arguing that as a nonmember fee-paying customer, injured while attending a PCA pottery class, in a facility it leased, she was not a beneficiary of PCA's activities, and the Act's immunity did not apply to her claim. At the time of her fall, Gryger was not a member of PCA and paid $210 to attend the pottery class. Those who wish to support PCA's mission can become members by paying annual dues, which affords them benefits such as discounts on classes.

On April 27, 2018, after argument on the motion, Judge Susan L. Claypoole entered an order dismissing Gryger's complaint. In a statement of reasons accompanying the order, the judge explained the Act afforded immunity to PCA because Gryger was injured while receiving a benefit from PCA's

activities despite the fact she was not a member of PCA and paid a fee for the class. Relying on our decision in Green v. Monmouth Univ., 452 N.J. Super. 542, 599 (App. Div. 2018) (Green I), the judge wrote:[1]

> "[c]haritable 'immunity recognizes that a beneficiary of the services of a charitable organization has entered into a relationship that exempts the benefactor from liability.' However, as the cases cited above have held, that relationship is not restricted to students, worshipers, or members of a charity, but includes others, including persons paying to attend concerts and similar events hosted by educational and religious institutions." Green [I], 452 N.J. Super. at 599 [(]quoting Kuchera v. Jersey Shore Family Health [Ctr.], 221 N.J. 239, 247 (2015)[)]; see also Auerbach v. Jersey Wahoos Swim Club, 368 N.J. Super. 403, 414-15 (App. Div. 2004).
>
> Furthermore, "beneficiary status does 'not depend upon a showing that the claimant personally received a benefit from the works of the charity….'" Green[I] . . . 452 N.J. Super. at 558-59, [(]quoting Loder v. St. Thomas Greek Orthodox Ch[ur]ch, 295 N.J. Super. 297, 303 (App. Div. 1996)[)]; Kain [v. Gloucester City], 436 N.J. Super. 466, 480-81 (App. Div. 2014)]. The Green[I] [c]ourt went on to hold, ". . . that the university hosting the concert is immune to [the non-student and fee-paying] plaintiff who tripped at [a]concert [at Monmouth University]."

Judge Claypoole rejected Gryger's contention that dismissal was not appropriate because the day before oral argument – after receiving the judge's

---

[1] Affirmed in Green II, 237 N.J. 516.

tentative decision to grant PCA summary judgment – Gryger filed a motion to amend her complaint to add a gross negligence claim. Charitable immunity does not apply to claims of gross negligence. N.J.S.A. 2A:53A-7(c)(1). The judge determined that because Gryger moved to amend her complaint on the "eve before oral argument for [PCA's] summary judgment motion[,]" with discovery having ended two months earlier, "the [c]ourt must also be concerned of undue delay or prejudice."[2]

### III

In this appeal, Gryger argues that summary judgment should not have been granted because she paid a higher fee to attend PCA's pottery class than PCA dues paying members would be charged, and therefore, she was not a beneficiary of defendant's charitable works at the time of her injury. Citing Loder, 295 N.J. Super at 303, Gryger maintains the dispositive factor in determining beneficiary status under the Act is not whether she personally received a benefit from the

---

[2] Plaintiff filed a motion for reconsideration, contending the judge failed to consider that PCA's corporate designee gave deposition testimony that Gryger was not a beneficiary of the organization, and failed to recognize her initial complaint contended PCA was grossly negligent by asserting its "recklessness" caused her injury. Finding no merit to her arguments, the judge denied the motion. The denial is not the subject of this appeal.

8

works of the charity, but rather whether PCA, pleading immunity at the time of the injury, was performing its charitable objectives.

Gryger asserts that because she directly paid PCA a fee to participate in the charity's activities, and suffered an injury through its negligence while doing so, her claim is not subject to the Act's immunity. She relies upon three cases where charitable immunity under the Act was denied: Kirby v. Columbian Inst., 101 N.J. Super. 205, 207, 211 (Cty. Ct. 1968) (denying immunity to a non-profit corporation organized "to promote the mental and moral improvement of men, women, and children," when the plaintiff was injured at the defendant's commercial bowling alley in which he paid money to bowl); Book v. Aguth Achim Anchai, 101 N.J. Super. 559, 561, 564 (App. Div. 1968) (denying immunity to a synagogue when the plaintiff was injured on the synagogue's property while attending a bingo game in which the plaintiff paid the defendant one dollar to attend); and Kasten v. Y.M.C.A., 173 N.J. Super. 1, 5, 7, 11 (App. Div. 1980) (denying immunity to a non-profit organization whose purpose was to advance the general health of the people who engage in the activities it supports, when the fee-paying nonmember plaintiff was injured while skiing on a ski slope operated by the organization).

A-4550-17T1

We are unpersuaded by Gryger's arguments and affirm substantially for the reasons expressed in Judge Claypoole's cogent statement of reasons. We add the following comments addressing our Supreme Court's recent decision in Green II, which was rendered after the judge's summary judgment order and amplifies our decision in Green I, and Gryger's misplaced reliance on Kirby, Book, and Kasten.

In Green II, the Court explained that the third prong of the charitable immunity test involves two inquiries – whether the charity "was promoting objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." 237 N.J. at 531 (citing Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333, 350 (2003)). The first is whether the organization seeking immunity was engaged in the performance of the charitable objectives it was organized to advance at the time of the injury. Ibid. "The second is whether 'the injured party [was] a direct recipient of those good works.'" Ibid. (quoting Ryan, 175 N.J. at 350).

As for the first inquiry, Gryger was injured at PCA's facility where she was attending a pottery class operated by PCA. The class was an activity that was substantially and directly related to PCA's mission statement and, therefore, the organization was engaged in charitable activity at the time of her injury.

Despite the fact Gryger paid a higher nonmember fee to participate in the class, there is nothing in the record indicating PCA's pottery class was a commercial or profit making activity.

Gryger's reliance on <u>Kirby</u> and <u>Kasten</u> is misplaced because the plaintiffs in both of those cases were injured while participating in activities operated by the defendants that were deemed both charitable and commercial in nature, which eliminated the defendants' charitable immunity under the Act. In <u>Kirby</u>, charitable immunity did not shield the defendant non-profit organization because the plaintiff was more akin to a business invitee of a for-profit enterprise, a public bar and bowling alley, "bearing no substantial and direct relation" to the defendant's charitable mission. 101 N.J. Super. at 211. Moreover, the record demonstrated that the defendant was not organized exclusively for charitable purposes, but for two purposes "one of which was charitable, and the other not charitable but rather mutually advantageous to club members." <u>Id.</u> at 209-10. Likewise, in <u>Kasten</u>, the plaintiff was injured at the defendant's ski resort operation, which we deemed was at best, a mixed commercial and charitable operation that was "geared to generate profit for the organization's charitable purpose." 173 N.J. Super. at 7.

Gryger's reliance on Book is equally misplaced. There, we determined it was obvious that the operation of bingo games for profit was not one of the purposes for which the defendant synagogue was organized. 101 N.J. Super. at 563. Even though the "net proceeds were used entirely for charitable or religious purposes[, they] do not convert such games to charitable or benevolent 'works' so as to clothe the organization with immunity from liability in a tort suit brought by one who is but a patron of the games." Ibid. Thus, the plaintiff "was not a beneficiary but was a person 'unconcerned in and unrelated to and outside the benefactions' of the synagogue and . . . the defendant therefore was not clothed with the immunity" under the Act. Id. at 564.

Moving to the second inquiry of the charitable immunity test's third prong, Gryger was at PCA's facility to receive pottery instruction, a benefit from the organization. As the Court held in Green II,

> [t]he notion of who is a beneficiary of a charity's works "is to be interpreted broadly, as evidenced by the use of the words 'to whatever degree' modifying the word 'beneficiary' in the [Charitable Immunity Act]." Ryan, 175 N.J. at 353 (discussing N.J.S.A. 2A:53A-7). "Those who are not beneficiaries must be 'unconcerned in and unrelated to' the benefactions of such an organization." Ibid.
>
> [Green II, 237 N.J. at 536.]

Thus, Gryger's presence at PCA when she was injured was as a beneficiary directly related to PCA's charitable purpose.

Similar to our conclusion in the first inquiry of the test, the fact that Gryger paid a fee to take the pottery class does not negate her status as a beneficiary of PCA's charitable activities. We find support in our decisions in Green I and Loder. In Green I, we held the plaintiff was a beneficiary of the defendant university's charitable works when she was injured on the university's property while attending a concert for which she purchased a ticket. 452 N.J. Super. at 558-59. In Loder, we held the plaintiff was a recipient of the defendant church's charitable works after attending a fundraiser in which the plaintiff purchased Greek food. 295 N.J. Super. at 299, 303.

Accordingly, PCA was entitled to summary judgment dismissal of Gryger's claim for personal injuries.

To the extent we have not addressed any of Gryger's arguments, it is because we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4550-17T1