Tamika YOUNG, as parent and natural guardian of J.Y., a minor, Plaintiff,

v.

UNITED STATES of America; Heather Crawford, D.O.; Shaurin Patel, M.D.; Beverly E Tew, M.D.; and Cooper University Hospital, Defendants.

Civil. No 12–5215 (RBK/AMD)

United States District Court,
D. New Jersey.

Signed December 2, 2015

**340**

Derek R. Layser, Layser & Freiwald, PC, Westmont, NJ, Joseph Marano, Courtney C. Barbacane, Layser & Freiwald, Audubon, NJ, for Plaintiff.

Daniel J. Gibbons, Office of the United States Attorney, Newark, NJ, Elizabeth Ann Pascal, U.S. Department of Justice, Camden, NJ, Carolyn R. Sleeper, Parker McCay PA, Mount Laurel, NJ, for Defendants.

## OPINION

KUGLER, United States District Judge:

This lawsuit for medical malpractice under the Federal Tort Claims Act stems from the care and treatment of Plaintiff Tamika Young ("Young") during the end of her pregnancy with and delivery of J.Y., her child. Young was treated at Cooper University Hospital ("CUH") by doctors employed by CUH (collectively, the "Cooper Defendants"), and by doctors employed by CAMcare Health Corporation ("CAMcare"). This matter comes before the Court on Defendant United States (the "Government")'s Motion to Dismiss for Lack of Subject Matter Jurisdiction or Alternatively, for Summary Judgment (the "Government's Initial Motion" or "Gov't's Initial Mot.") [Dkt. No. 81] on the basis that the Government is immune from suit or at least entitled to a cap on damages based on the New Jersey Charitable Immunities Act ("NJCIA"), N.J.S.A. 2A:53A–7, et seq; the Government's Motion to Strike Plaintiff's and the Cooper Defendants' Sur–Replies ("Government's Motion to Strike" or "Gov't's Mot. Strike") [Dkt. No. 96]; and the Government's Motion for Leave to Amend its Answer Out of Time ("Government's Motion for Leave" or "Gov't's Mot. Leave") [Dkt. No. 98] to assert the NJCIA defenses.

For the reasons that follow, the Government's Initial Motion is **DENIED, PARTIALLY WITHOUT PREJUDICE**, the Government's Motion to Strike is **GRANTED**, and the Government's Motion for Leave is **GRANTED–IN–PART AND DENIED–IN–PART**.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following facts are alleged in the Second Amended Complaint (the "SAC") [Dkt. No. 30] unless otherwise indicated. On April 6, 2009, Young was approximately thirty-one weeks pregnant and was admitted to CUH late in the evening due to complaints of reduced fetal movement. Young was treated by five doctors while at CUH. Dr. Neil Kaplitz and Dr. Eric Chang were both employees of CAMcare, which is a federally qualified health center ("FQHC"). The other three doctors, Dr. Heather Crawford, Dr. Shaurin Patel, and Dr. Beverly Tew, were employees of CUH.

Once admitted, Young received a low score on a biophysical profile ("BPP") and a note was signed by Dr. Tew, with which Dr. Kaplitz was in agreement, that Young should be continuously monitored due to her low BPP score. On April 7th at 4:10am, a note stated that Dr. Tew and Dr. Crawford were made aware of Young's situation. At 5:10am there was a prolonged deceleration, and at 7:50am Dr. Chang was made aware of the decelerations and was going to come assess the situation.

At 9:05am Young was provided spinal anesthesia for an emergency C-section. There was decreased fetal movement and an abnormality in fetal heart rate/rhythm. The emergency C-section took approximately two hours and was performed by Dr. Chang with the assistance of Dr. Patel.

When delivered, J.Y. was underweight and severely asphyxiated. J.Y. suffered a brain bleed, has a permanent heart murmur, and has been diagnosed with cerebral palsy. J.Y. was transferred to Children's Hospital of Philadelphia and remained there for five months receiving treatment.

On October 4, 2011, Young filed a Federal Tort Claim against Dr. Kaplitz and Dr. Chang with the United States Department of Health and Human Services, Office of the General Counsel, Claims Office ("DHHS"). No determination was received on Young's claims by DHHS by the time she filed her complaint.[1] On August 20, 2012, after the six-month statutory period expired, Young brought this lawsuit against the Government.

The parties have some dispute as to the procedural facts for this matter, so the relevant procedural facts are recited here. Following the filing of a First Amended Complaint immediately after filing the initial Complaint,[2] Magistrate Judge Donio entered an amended scheduling order that required any motion to amend the pleadings to be filed by October 30, 2014. (Am. Sched. Order (Sept. 24, 2013) [Dkt. No. 17].) Magistrate Judge Donio then permitted Young to file the SAC beyond that deadline. (Order (Feb. 10, 2014) [Dkt. No. 27].) No further scheduling orders include any further deadline for amending the

pleadings beyond the October 30, 2014 date set out in Magistrate Judge Donio's order of September 24, 2013.

The SAC was then filed on February 12, 2014 to include claims against the Cooper Defendants as well as claims against the Government. The Government answered on February 26, 2014. (*See* Gov't's Answer to SAC [Dkt. No. 34].) The Government's Answer includes no mention of the NJCIA. The case then proceeded. Magistrate Judge Donio entered an amended scheduling order on May 1, 2014 that set a deadline of January 23, 2015 for the filing of dispositive motions. (Am. Sched. Order (May 1, 2014) [Dkt. No. 41].) Subsequently, Magistrate Judge Donio entered another amended scheduling order on June 17, 2015, which required that "[a]ny motion to amend the scheduling order to permit the filing of motions to amend and/or of dispositive motions shall be filed by no later than June 26, 2015." (Am. Sched. Order (June 17, 2015) [Dkt. No. 80].) The Government's Initial Motion was filed on June 26, 2015.

The Government now seeks to dismiss the complaint against it on jurisdictional grounds, asserting provisions of the NJCIA, N.J.S.A. 2A:53A–7, et seq. During the course of briefing on the Government's Initial Motion, the Cooper Defendants and Young filed sur-replies, which the Government moves to strike. The Government also seeks leave to amend its Answer to include NJCIA defenses in the event this Court denies the Government's Initial Motion.

---

1. This is not to suggest a determination has since been received, but the record is not clear on whether or not DHHS ever decided the claim issue.

2. The Complaint as originally filed was sealed by the Clerk's Office due to failure to comply

with redaction rules pursuant to Federal Rule of Civil Procedure 5.2(a). The First Amended Complaint contained no substantive amendments, and only served to comply with the redaction requirements of Rule 5.2(a).

## II. JURISDICTION

Young brings state law tort claims against the United States government, seeking to invoke jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680, and state law claims against the Cooper Defendants. It is undisputed that Dr. Kaplitz and Dr. Chang by nature of working at CAMcare, an FQHC, are "deemed to be . . . employee[s] of the Public Health Service" and as such "[t]he remedy against the United States . . . shall be exclusive." 42 U.S.C. § 233(g)(1)(A); *see also* 42 U.S.C. § 233(a).

However, presently before the Court is the issue of whether it has jurisdiction to hear this matter. "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz,* 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (citing *United States v. Mine Workers,* 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947)); *White–Squire v. U.S. Postal Serv.,* 592 F.3d 453, 456 (3d Cir.2010). Therefore, this Court will assume jurisdiction to evaluate the issues presented by the Government's Initial Motion.

For the reasons that follow in Section III, *infra,* this Court will deny the Government's Initial Motion as it relates to subject matter jurisdiction. Accordingly, this Court does have jurisdiction over the FTCA claim pursuant to 28 U.S.C. § 1346(b), and exercises its supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

## III. MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

The Government's Initial Motion presents the Court with two different issues:

(1) whether CAMcare qualifies for absolute immunity under the NJCIA; and (2) whether CAMcare qualifies for a cap on damages under the NJCIA. The Government proposes both the standard for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and the standard for summary judgment under Federal Rule of Civil Procedure 56, without arguing which standard should apply to which issue, or if there should even be different standards applied to the two issues. (*See* Gov't's Initial Mot. Br. [Dkt. No. 81–1] at 4–5.) Young similarly recites the two standards without offering guidance. (*See* Young Opp. [Dkt. No. 85] at 8–9.)[3] The Cooper Defendants, on the other hand, propose no standard at all, and argue that this could not possibly be a motion to dismiss for lack of subject matter jurisdiction, because "without the jurisdictional power to make decisions," this Court could not find that CAMcare qualifies for immunity under the NJCIA. (*See* Cooper Defs.' Opp. [Dkt. No. 86] at 7.) Thus, the Court must first determine what standard should apply.

For the reasons that follow, this Court will apply the standard for a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as to the issue of absolute immunity, and treat the issue of a damages cap as a motion for summary judgment and apply the standard of Federal Rule of Civil Procedure 56. Applying these standards, the Court concludes that the Government does not qualify for absolute immunity under the NJCIA, but may qualify for the damages cap. Accordingly, the Court will deny the Government's Initial Motion, order limited discovery on the issue of the damages cap, and order supplemental briefing on the same. Thus, the denial

---

**3.** Young's Opposition is not paginated. Therefore, all page number references will be to the page numbers assigned by the CM/ECF system.

with respect to the damages cap is without prejudice.

## A. MOTION TO DISMISS VERSUS MOTION FOR SUMMARY JUDGMENT

The Government's Initial Motion is styled primarily as a motion to dismiss for lack of subject matter jurisdiction, with summary judgment as an alternative basis for relief. The Government's argument for invocation of the standard under Rule 12(b)(1) is that jurisdiction is premised on the FTCA, which is a narrow waiver of sovereign immunity. (*See* Gov't's Initial Mot. Br. at 6–9.) A party seeking to bring a claim under the FTCA must satisfy the jurisdictional thresholds contained within 28 U.S.C. § 1346(b)(1). These are:

A claim must be made (1) against the United States, (2) for money damages, ... (3) for injury or loss of property, or personal injury or death (4) caused by the negligent or wrongful act or omission of any employee of the Government (5) while acting within the scope of his office or employment, (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*CNA v. United States*, 535 F.3d 132, 141 (3d Cir.2008) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)) (alteration in original). It is the FTCA statute itself that grants jurisdiction to the federal courts to hear claims against the United States, and "[t]hus, FTCA plaintiffs must meet the criteria of § 1346(b)(1) before a district court may exercise jurisdiction." *Id.* at 140–41 (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The Third Circuit has made clear that these six conditions are jurisdictional, and that failure to satisfy them will divest this Court of jurisdiction under the princi-

ples of sovereign immunity. *See id.* at 142–43.

The issue here is that the jurisdictional attack the Government makes here in claiming absolute immunity from suit is against the sixth and final condition of jurisdiction—"under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (treating this element as jurisdictional). Determining if the Government would be liable requires evaluating the merits of the immunity defense, with the result that the determination of jurisdiction is inherently intertwined with the merits—i.e., there are "overlapping issues of proof." *CNA*, 535 F.3d at 143 (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983)). In these intertwined situations, the Third Circuit has mandated that "district courts must demand 'less in the way of jurisdictional proof than would be appropriate at a trial stage." *Id.* at 144 (quoting *Gould Elecs.*, 220 F.3d at 178).

█ However, Young and the Cooper Defendants instead urge this Court to treat the immunity defense simply as an affirmative defense and not one of jurisdiction. (Young Opp. at 10–12; Cooper Defs.' Opp. at 4 n.1, 5–7.) Young and the Cooper Defendants are correct that in a typical case as against a private entity, the assertion of immunity under the NJCIA would merely be an affirmative defense, and something to be decided in a motion for summary judgment. *See Kain v. Gloucester City*, 436 N.J.Super. 466, 479, 94 A.3d 937 (2014) (citing *Abdallah v. Occupational Ctr. of Hudson Cnty., Inc.*, 351 N.J.Super. 280, 288, 798 A.2d 131 (2002)). However, in the situation of an FTCA plaintiff, because "being liable to the claimant in

accordance with the law of the place" is an element of jurisdiction under the statute, the issue of absolute immunity of the Government is an issue of jurisdiction. *See CNA*, 535 F.3d at 143–44.

■ Accordingly, because the Government's Initial Motion seeks a determination of absolute immunity under the NJCIA, which would prevent the Government from "being liable to the claimant in accordance with the law of the place," the determination on that issue must be resolved as jurisdictional and the standard of Rule 12(b)(1) must apply.

■ On the other hand, the issue of the damages cap under the NJCIA, in the alternative, does *not* create an issue of absolute immunity. A limitation on damages still results in the Government "being liable to the claimant;" the Government is just not liable for an unlimited amount. As such, there is no jurisdictional issue under the grant of jurisdiction in the FTCA. Therefore, the damages cap must be resolved as an issue of summary judgment, and the standard of Rule 56 must apply.

## B. TIMING OF THE GOVERNMENT'S INITIAL MOTION

Young and the Cooper Defendants first raise procedural objections to this Court's consideration of the Government's Initial Motion. As to the main relief being sought by the motion—a dismissal for lack of subject matter jurisdiction—such a motion may be brought at any time. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A defendant may raise the issue

of subject matter jurisdiction at any time, and the defense is not waived by failure to bring a motion or raise it in a pleading at an earlier stage of litigation. *See* Fed. R. Civ. P. 12(h)(1); Fed. R. Civ. P. 12(b)(1). Therefore, the primary argument for dismissal due to lack of subject matter jurisdiction due to absolute immunity under the NJCIA is not time barred.

The argument in the alternative, for application of the damages cap under the NJCIA, is a closer issue. The operative scheduling order, entered on June 17, 2015 by Magistrate Judge Donio, ordered that "[a]ny motion to amend the scheduling order to permit the filing of motions to amend and/or of dispositive motions shall be filed by no later than June 26, 2015." (Am. Sched. Order (June 17, 2015) [Dkt. No. 80].) Rather than filing a motion to amend the scheduling order to permit filing a dispositive motion, the Government immediately filed a dispositive motion on June 26, 2015—the Government's Initial Motion.

Young and the Cooper Defendants are correct that the Government's conduct did not comport with the scheduling order.[4] Although procedurally in error, for the reasons explained in Section V.C–D, *infra*, this Court will amend the scheduling order to permit the Government to amend the scheduling order to amend its answer to plead the damages cap as an affirmative defense. Despite the procedural infirmity, this Court will consider the relief requested because issues related to the damages cap are intermingled with issues related to absolute immunity—which may be properly raised at any time as an issue of subject matter jurisdiction in this FTCA case—

---

4. It is possible that the Government misread the order to understand that only motions to amend the pleadings required a motion to amend the scheduling order. However, counsel for the Government is called upon to read all orders from the Court more carefully in the future to prevent what appears to be an avoidable procedural error in seeking to apply the damages cap to the Government, and is reminded that failure to comply with orders from the Court can result in sanctions.

and because the Government has at least attempted to explain the procedural issue.

### C. LEGAL STANDARDS

As explained above, the Court will apply the standard under Rule 12(b)(1) for the issue of absolute immunity, and the standard under Rule 56 for the issue of the damages cap.

#### 1. RULE 12(B)(1) STANDARD

An attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA*, 535 F.3d at 139. A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (internal quotations and alterations omitted). In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id.* (citing *Gould Elecs.*, 220 F.3d at 178).

The Government has presented this Court with a factual attack, as the Government contends that the facts of the case preclude this Court from exercising subject matter jurisdiction. In a factual attack on subject matter jurisdiction, plaintiff's allegations enjoy no presumption of truthfulness. *CNA*, 535 F.3d at 139; *Mortensen*, 549 F.2d at 891. The burden of persuasion is placed on plaintiffs to establish jurisdiction,[5] and the Court may make factual findings beyond the pleadings that are decisive to determining jurisdiction. *CNA*, 535 F.3d at 145; *Atkinson*, 473 F.3d at 514. However, the Court is also mindful of the fact that as this particular jurisdictional issue that is "intertwined with the merits," the Court will "demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *See CNA*, 535 F.3d at 144–45 (internal quotations omitted).

#### 2. RULE 56 STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the Court weights the evidence presented by the par-

---

**5.** Any analogy to the discretionary function exception that would seek to place the burden on the Government is misplaced. The Third Circuit has explained that "the Government has the burden of proving the applicability of the discretionary function exception." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir.2012). The Third Circuit noted in *Abunabba* that it shifts this burden because the discretionary function exception is analogous to an affirmative defense, which would seemingly make the burden shift apply here as well. *See id.* at 334 n. 2. However, this burden shift only occurs *after* the plaintiff satisfies "the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity (i.e., that the requirements of 28 U.S.C. § 1346(b)(1) are met)." *Id.* at 333. The Government's Initial Motion seeking a determination of absolute immunity goes to the heart of one of the elements of 28 U.S.C. § 1346(b)(1), as explained in *CNA* and *Gould Electrics*, and thus makes the burden shift under *Abunabba* inapplicable. However, as explained above, a less stringent requirement of proof is placed on the plaintiff due to the intertwined merits and jurisdiction.

ties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Even if the facts are undisputed, a disagreement over what inferences may be drawn from the facts precludes a grant of summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 744 (3d Cir.1996). Further, "any unexplained gaps in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment." *Id.* (quoting *Ingersoll–Rand Fin. Corp. v. Anderson,* 921 F.2d 497, 502 (3d Cir.1990)) (internal quotations and alterations omitted).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cnty. of Lawrence,* 396 F.3d 314, 319 (3d Cir.2005). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

**6.** The NJCIA also includes a similarly worded provision for organizations "organized exclusively for hospital purposes" that also makes clear that "nothing herein shall be deemed to exempt the agent, employee, or servant individually from their liability for any such negli-

### D. NJCIA IMMUNITIES

The NJCIA provides two different immunity provisions relevant to the Government's Initial Motion. First, the NJCIA provides absolute immunity from suit for certain nonprofit organizations while also refusing to immunize individual paid healthcare providers:

No nonprofit corporation, society or association *organized exclusively for religious, charitable or educational purposes* or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association . . . .

Nothing in this subsection shall be deemed to grant immunity to *any health care provider,* in the practice of his profession, *who is a compensated employee,* agent or servant of any nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes.

N.J.S.A. 2A:53A–7(a) (emphases added).[6] Second, the NJCIA provides for a cap on liability for certain nonprofits:

*Notwithstanding the provisions of [N.J.S.A. 2A:53A–7],* any nonprofit corporation, society or association *organized exclusively for hospital purposes* shall be liable to respond in damages to such beneficiary who shall suffer damage from the negligence of such corpora-

gence." N.J.S.A. 2A:53A–7(b). However, N.J.S.A. 2A:53A–8 appears to severely abrogate any immunity from suit that may be afforded to any organization under N.J.S.A. 2A:53A–7(b).

tion, society or association or of its agents or servants to an amount not exceeding $250,000, together with interest and costs of suit....

N.J.S.A. 2A:53A–8 (emphases added).

■ "The most prominent distinction between nonprofit entities organized exclusively for charitable, religious, or educational purposes and nonprofits organized exclusively for hospital purposes is that the former are immune from liability while the latter are subject to liability for negligence, albeit with a cap on its damages." *Kuchera v. Jersey Shore Family Health Ctr.*, 221 N.J. 239, 247, 111 A.3d 84 (2015). Put another way, if a nonprofit is organized "exclusively for hospital purposes," then no absolute immunity can apply. Accordingly, if this Court determines that CAMcare is organized exclusively for hospital purposes, then the jurisdictional inquiry is concluded, even without determining the charitable status of CAMcare.

### 1. AVAILABILITY OF NJCIA DEFENSES TO THE GOVERNMENT

Before analyzing the specifics of the two immunities, the Court will first address the arguments raised by Young and the Cooper Defendants that this Court should preclude applicability of any NJCIA defenses—absolute or otherwise—to the Government for two reasons: (1) it is impossible to reconcile the Government's liability for the actions of CAMcare under the FTCA with the idea that CAMcare is a charitable organization under state law (Cooper Defs.' Opp. at 7–11); and (2) because the NJCIA expressly exempts individual health care providers from any immunity, the Government as the FTCA defendant is similarly precluded from asserting any immunity (Young

Opp. at 14; Cooper Def.'s Opp. at 12–14). Both of these positions are incorrect, and will be addressed in turn.

■ The first argument represents a misunderstanding of how FTCA liability for an FQHC affects the status of the health center and its employees. CAMcare is an FQHC, and has been continuously since 1996. (Gov't Statement of Material Facts [Dkt. No. 81–2] ¶ 6; Bryant Decl. Dkt. No.; Ex. B to Bryant Decl. [Dkt. No. 81–5].) That CAMcare is an FQHC is not in dispute, and is the sole basis for this action being brought in federal court as opposed to in the New Jersey Superior Court.[7] Thus, CAMcare itself, and any employees of CAMcare are "deemed to be ... employee[s] of the Public Health Service" with the attendant result that "[t]he remedy against the United States for ... any officer, governing board member, employee, or contractor ... of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph shall be exclusive of any other civil action or proceeding." 42 U.S.C. § 233(g)(1)(A).

The Third Circuit has spoken to this misunderstanding, most recently in *Lomando v. United States*, 667 F.3d 363 (3d Cir.2011), a case dealing with the applicability of the NJCIA to the Government in an FTCA suit. In *Lomando*, the relevant health care providers were volunteer physicians, and deemed employees of the Public Health Service pursuant to 42 U.S.C. § 233(o). *Lomando*, 667 F.3d at 368. The plaintiff argued that once the volunteers were deemed federal employees, they could no longer be volunteers for the purposes of the NJCIA. *Id.* at 376–77. In rejecting this argument, the Third Circuit remarked that the plaintiff had "funda-

---

7. Indeed, Young first did bring suit in the New Jersey Superior Court, Law Division, which is when she was informed by counsel

for CAMcare that only the Government could be sued for claims against CAMcare. (*See* Ex. A to SAC.)

mentally misapplie[d] the effect of the physicians' 'deemed' employee designation." *Id.* at 377. The court went on to explain that "the employee designation is a legal construct effective only for the purposes of [42 U.S.C. § 233]." *Lomando v. United States,* 667 F.3d 363, 377 (3d Cir.2011). The Third Circuit has also held in the context of FQHCs that "health care workers at private clinics, even ones receiving some federal aid, are not federal employees in the usual sense. After all, they do not perform a traditional government function or work in a government building, and they are not on the federal payroll." *Santos ex rel. Beato v. United States,* 559 F.3d 189, 200 (3d Cir.2009) (internal quotations and alterations omitted) (quoted with approval by *Lomando,* 667 F.3d at 377). Thus, the two positions are not irreconcilable.

 As to the second argument, *Lomando* is again instructive in demonstrating how Young and the Cooper Defendants' position is incorrect. The Third Circuit in *Lomando* made clear "the FTCA provides that the United States will be liable to the extent that a private employer would be liable in similar circumstances in the same locality." *Lomando,* 667 F.3d at 374. Specifically, "[d]efenses available to a similarly-placed employer may be rooted in the common law, or they may be created statutorily, as in the case of the immunity conferred on charitable nonprofit entities and their volunteers under the NJCIA." *Id.* at 376. Young and the Cooper Defendants are correct that the NJCIA bars individual medical providers from any immunity, but ignore the fact that under the FTCA, the Government stands in the shoes of the individual doctors and CAMcare simultaneously as sovereign, employer, and employee. *See id.* at 374–76. Regardless of the availability of any immunity defenses to the individual doctors, the immunity defense is available to an organization such as CAMcare, pro-

vided it satisfies all the requirements of the NJCIA. Because CAMcare could assert the immunity, the Government may assert it here.

It is an unfortunate reality that this may preclude Young from obtaining the full amount of recovery she seeks and may result in the Cooper Defendants being liable for a higher amount of judgment if this case proceeds to trial and Young is successful at trial. But, this result was contemplated and accepted by Congress in passing the FTCA and subsequent amendments. *See id.* at 378 (citing H.R.Rep. No. 100–700, at 6 (1998), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5950 ("The 'exclusive remedy' provision of [the FTCA] is intended to substitute the United States as the solely permissible defendant.... Therefore, suits against Federal employees are precluded even where the United States has a defense which prevents actual recovery.") and *United States v. Smith,* 499 U.S. 160, 166, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991) ("Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether.")). As such, this argument, too, fails. Therefore, the Government may properly bring the NJCIA immunity defenses before this Court.

## 2. "CHARITABLE PURPOSES" VERSUS "HOSPITAL PURPOSES"

The Government in the Government's *Initial Motion* seeks to be declared absolutely immune from suit on the basis of the immunity provisions of the NJCIA. (Gov't's Initial Mot. Br. at 12–28.) In support of its position, the Government submits that CAMcare "was organized exclusively for charitable purposes." (Gov't's Initial Mot. Br. at 15.) However, the Gov-

ernment overlooks the distinction made between "charitable purposes" and "hospital purposes" in the recent New Jersey Supreme Court case of *Kuchera v. Jersey Shore Family Health Center*, 221 N.J. 239, 111 A.3d 84 (2015). For the reasons that follow, the Government's Initial Motion will be denied with respect to absolute immunity under the NJCIA.

An analysis of *Kuchera* and its effect on the merits of the NJCIA defenses for FQHCs presents an issue of first impression in this district.[8] In *Kuchera*, the plaintiff suffered a fall while attending a free eye screening conducted by the New Jersey Commission for the Blind and Visually Impaired that was held at defendant's health center. 221 N.J. at 244, 111 A.3d 84. The trial judge determined that because the defendant nonprofit had a hybrid purpose including both charitable and educational purposes as well as the operation of a hospital, the defendant qualified for absolute immunity, and the Appellate Division of the New Jersey Superior Court affirmed. *Id.* The Appellate Division also found that the defendant nonprofit was organized for "charitable purposes" based on the charitable health clinics the defendant nonprofit operated. *Id.*

The New Jersey Supreme Court reversed, taking a different view of the statutory scheme. The court concluded that it was error to confine "hospital purposes" to the "vintage conception of a hospital as a facility providing a site for physicians to provide acute and continuous inpatient care for their patents. Rather, to effect the legislative mandate that the [NJ]CIA should be liberally construed to effectuate

its purpose, we focus on the many medical pursuits of a modern hospital in New Jersey." *Id.* at 252, 111 A.3d 84. In reaching this conclusion, the court considered that "[t]he modern hospital is now a place where members of the community not only seek emergency services but also preventative services, therapy, educational programs, and counseling.... [H]ospitals now provide comprehensive services beyond acute inpatient care, and our conception of 'hospital purposes' needs to expand to reflect the many health-related pursuits of the modern hospital." *Id.* at 251–52, 111 A.3d 84.

Taking these factors into consideration, the court re-assessed the defendant nonprofit and found that it was indeed organized for hospital purposes and subject to the damages cap of the NJCIA rather than being afforded absolute immunity. Importantly, the court noted what the modern hospital in New Jersey looks like in considering what "hospital purposes" should mean for the purposes of the NJCIA:

> The modern hospital in New Jersey may also include a teaching component. The education of medical students, physicians, nurses, and other health professionals is a significant core hospital purpose related to the provision of quality health care to patients. The modern hospital in New Jersey also provides medical care to those who can pay for the care and to those who cannot. In fact, every acute care hospital in this State is required to provide care to anyone who seeks care without regard to the ability to pay. N.J.S.A. 26:2H–

---

8. Another judge of this district in deciding a highly similar motion addressed *Kuchera* in an opinion designated not for publication, but ultimately only in the context of permitting the Government to amend its answer to assert the immunity defense under the NJCIA. *See Troilo v. Michner*, Civ. No. 13–2012(RMB), 2015 WL 7012743, at *3 (D.N.J. Nov. 12,

2015). The judge in *Troilo* did not address the merits of the immunity defense, but did suggest that the Government may be arguing against itself in relying on *Kuchera* for finding an expansion of "charitable purposes." This Court agrees with that proposition, as explained in detail here.

18.64. *The provision of charity care is a core function of a hospital.*

*Id.* at 254, 111 A.3d 84 (emphasis added). The result of expanding the "hospital purposes" definition in this manner is a complimentary narrowing of "charitable purposes" as used in the NJCIA.

The Government in seeking absolute immunity under the NJCIA, argues that CAMcare is a charitable organization because it "provides comprehensive health services to underserved families—regardless of insurance status or ability to pay—in the City of Camden and throughout Camden and Gloucester Counties." (Gov't's Initial Mot. Br. at 18 (citing Bryant Decl. ¶ 3).) But this is the very definition of charity care, and as stated by the New Jersey Supreme Court, a "core function of a hospital." To find otherwise would be contrary to the settled state law.

Indeed, the evidence the Government points to in support of being organized for charitable purposes directs this court to the conclusion that CAMcare is actually organized for hospital purposes. Each of the first five statements contained in CAMcare's corporate purpose section on its Certificate of Incorporation explicitly mention "health services" and a laundry list of other medical services provided by the modern day hospital. (Bryant Decl. ¶ 4; Ex. A to Bryant Decl. Dkt. No.(a)–(e).) The remaining statements in the corporate purpose section deal with functions related to hospital purposes—such as billing for services rendered, providing residency programs, and conducting research—or the basic functions of a non-profit related to fundraising and operations. (Bryant Decl. ¶ 4; Ex. A to Bryant

Decl. ¶ 2(f)–(j).) These same corporate purposes were incorporated into CAMcare's Bylaws, which state on the cover of the document that CAMcare's mission statement is "to provide high quality comprehensive *primary health care* to the families we serve." (Bryant Decl. ¶ 7; Ex. C to Bryant Decl.] at D0013–14.)

This can be nothing other than an organization that is "exclusively for hospital purposes" and is certainly not "exclusively for charitable purposes." As the New Jersey Supreme Court noted, an organization can only avail itself of one immunity provision or the other. *See Kuchera,* 221 N.J. at 247, 111 A.3d 84. The burden is on Young as plaintiff to prove jurisdiction, which she has done sufficiently in the SAC. The Government has failed to present evidence to overcome the pleadings or even call them into question; rather, the Government has supported the argument against itself by showing that it does not qualify for absolute immunity. Accordingly, the Government's Initial Motion with respect to the absolute immunity defense will be denied.[9]

## 3. DAMAGES CAP

Having determined that the absolute immunity provision of the NJCIA is unavailable to the Government, the Court now turns to the availability of the damages cap provision. Both Young and the Cooper Defendants oppose applying the damages cap to CAMcare on the basis that CAMcare is not a hospital, nor is it owned or operated by a hospital. (*See* Young Opp. at 14–15; Cooper Defs.' Opp. at 11–12.) This argument is without merit and has no

---

9. Young and the Cooper Defendants ask this Court to deny absolute immunity on the basis of the funds CAMcare receives and the revenue it generates. (*See* Young Opp. at 13–14; Cooper Defs.' Opp. at 7–11.) The Court declines to examine CAMcare's finances at this juncture, and is satisfied that the overwhelming evidence supporting the conclusion that CAMcare is "organized exclusively for hospital purposes" is all that is required to remove CAMcare from the absolute immunity provision in favor of the damages cap.

basis in the case law cited by either Young or the Cooper Defendants. The statute itself does not require being owned or operated by a hospital. Rather, the plain language makes the damages cap applicable to "any nonprofit ... organized exclusively for hospital *purposes*." N.J.S.A. 2A:53A–8 (emphasis added). The New Jersey Supreme Court in *Kuchera* likewise counseled against a strict view of what "hospital purposes" would entail. Demanding that CAMcare be a licensed hospital or owned or operated by one would go against that.

However, the Court takes well Young and the Cooper Defendants' objections to the Government's late disclosure of the materials and certifications appended to the Government's Initial Motion. (*See* Young Opp. at 5 (objections to Statement of Material Facts); Cooper Defs.' Opp. at 5 & n. 2 (same).) This is a substantial amount of information that was apparently not disclosed earlier in the discovery process. Neither Young nor the Cooper Defendants actually filed a declaration or affidavit pursuant to Rule 56(d).[10] The Third Circuit typically has a "strong presumption against a finding of constructive compliance" with Rule 56(d). *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir.2002). However, this is a matter which falls squarely within the discretion of this Court. *See id.* at 206; *see also Doe v. Abington Friends Sch.*, 480 F.3d 252, 257–58 (3d Cir.2007). Both Young and the

Cooper Defendants noted their objections to the Government's Statement of Material Facts based on failure to produce any of the evidence previously in discovery.[11] While this Court does not condone failure to comply with the Federal Rules of Civil Procedure, in light of the volume of material allegedly produced for the first time in support of the Government's Initial Motion, the Court will exercise its discretion in considering this to be constructive compliance with Rule 56(d). Further, the Court is not satisfied that the Government has met its burden at this time of proving that there are no genuine disputed issues of fact so that the Court could render summary judgment.

Under Rule 56(d), the Court is permitted to either deny or defer ruling on the motion for summary judgment to permit for additional discovery. *See* Fed. R. Civ. P. 56(d)(1)–(2). There does not appear to be a substantive difference between denial with leave to refile and deferring ruling, as both would necessarily require additional briefing following the discovery period. Furthermore, the motion for summary judgment was made as an alternative argument in the Government's Initial Motion, thus the main focus of the Government's Initial Motion was not directed at this position. Therefore, this Court will deny without prejudice the alternative relief sought in order to permit a brief period of expedited discovery by Young and

---

10. Young's Opposition begins with a paper that is titled "Rule 56(d) Affidavit in Support of Plaintiff's Request to Deny Defendant USA's Motion to Dismiss/Motion for Partial Summary Judgment." However, this "Affidavit" is wholly defective. It argues both law and fact in direct contravention of L.Civ.R. 7.2(a). Further, it contains neither a jurat nor a statement in the form prescribed by 28 U.S.C. § 1746, rendering the document unsworn and not under the penalty of perjury. Thus it fails to be an "affidavit" by the plain meaning of the word. Finally, nowhere in

the "affidavit" does Ms. Barbacane, the purported affiant, explain what facts are not available to her that she would need in order to fully defend against the Government's Initial Motion. Despite this, the Court will still granting Young additional discovery.

11. However, the Cooper Defendants included their responses to the Government's Statement of Material Facts within the body of the brief. This is in violation of L.Civ.R. 56.1(a): "Each statement of material facts shall be a separate document (not part of a brief)...."

the Cooper Defendants limited solely to the issues related to the applicability of the damages cap under the NJCIA to CAMcare and any attendant issues.

Discovery will be permitted for forty-five (45) days only.[12] Within seven (7) days of the conclusion of this limited discovery period, the Government is granted leave to file a renewed motion for summary judgment limited solely to the issue of the applicability of the damages cap under the NJCIA to CAMcare. Any opposition will be due within fourteen (14) days, and a reply, if any, will be due within seven (7) days of the filing of the opposition.

## IV. MOTION TO STRIKE

Also before this Court, as noted, is the Government's Motion to Strike Young and the Cooper Defendants' Sur–Replies. "No sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned." L. Civ. R. 7.1(d)(6). Courts of this district generally will not permit consideration of sur-replies where no permission has been sought or granted to file a sur-reply. *See, e.g., Carroll v. Del. River Port Auth.*, Civ. No. 13–2833(JEI), 2014 WL 3748609, at *1 n. 1 (D.N.J. July 29, 2014); *Tucker v. Sebelius*, Civ. No. 07–2230(RBK), 2010 WL 2761525, at *5 n. 3 (D.N.J. July 12, 2010).

Neither Young nor the Cooper Defendants made an application to the Court to file sur-replies, much less received permission to do. Indeed, neither Young nor the Cooper Defendants have filed oppositions the Government's Motion to Strike. This Court finds the sur-replies to be improper, and also unpersuasive even if considered. Accordingly, the Government's Motion to Strike will be granted and the Court will not consider the sur-replies.

## V. MOTION FOR LEAVE TO AMEND

Having denied the Government's Initial Motion, this Court now turns to the Government's Motion for Leave, which was filed "as a protective measure, in light of its pending Motion to Dismiss for Lack of Subject Matter Jurisdiction or for Partial Summary Judgment based on NJCIA immunities." (Gov't's Mot. Leave Br. [Dkt. No.] at 4.) The Government's Motion for Leave is based on the same arguments presented in the Government's Initial Motion. Because this Court has determined that the Government cannot qualify for the absolute immunity under the NJCIA, and will be denying the Government's Initial Motion with prejudice as to that issue, the Motion for Leave will be denied with respect to the same. However, for the reasons that follow, the Motion for Leave will be granted with respect to the damages cap of the NCJIA, and the Government will be permitted to amend its answer to specifically assert the provisions of the NJCIA with respect to the damages cap.

### A. LEGAL STANDARD

At this late stage in the proceedings, the determination of whether the Government can amend its answer is governed by Federal Rules of Civil Procedure 15 and 16. The Government must first show under Rule 16 that it may modify the Scheduling Order to allow filing an amended pleading out of time, and then that it may file the amended pleading under Rule 15.

A party seeking to amend a pleading after the deadline set by the applicable scheduling order must demonstrate "good cause" for modifying the order. Fed. R. Civ. P. 16(b)(4). "Good cause may be satisfied if the movant

---

**12.** This Court would normally limit the discovery period to thirty (30) days, but is including an extra fifteen days due to the end of the year holiday period. Accordingly, no extensions to this period will be granted without a heightened showing of good cause.

shows that their delay in filing the motion to amend stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." *Fermin v. Toyota Material Handling, U.S.A., Inc.,* Civ. No. 10–3755(JLL), 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012) (internal quotations and alterations omitted).

■ "[A] party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied "where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Schumann v. Astrazeneca Pharms. L.P.,* 769 F.3d 837, 849 (3d Cir.2014) (quoting *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000)). "Courts in this Circuit … have taken a more forgiving approach to parties who fail to raise affirmative defenses in an answer, as courts have held that the failure to raise an affirmative defense by responsive pleading or appropriate motion does not always result in waiver." *Sultan v. Lincoln Nat'l Corp.,* Civ. No. 03–5190(JBS), 2006 WL 1806463, at *13 (D.N.J. June 30, 2006) (citing *Prinz v. Greate Bay Casino Corp.,* 705 F.2d 692 (3d Cir.1983)); *see also Eddy v. V.I. Water & Power Auth.,* 256 F.3d 204 (3d Cir.2001) (reversing the district court for deeming qualified immunity defense waived when not pleaded in the answer and raised for the first time on summary judgment); *Kleinknecht v. Gettysburg Coll.,* 989 F.2d 1360, 1373–74 (3d Cir.1993) (permitting raising statutory immunity for the first time in a motion for summary judgment).

## B. TIMING OF OPPOSITION PAPERS

It must be noted that neither Young nor the Cooper Defendants filed a timely opposition to the Government's Motion for Leave. The Government's Motion for Leave was filed on August 24, 2015. The entry on the docket from the same day indicates that the Motion was set for a September 21, 2015 return date in front of Magistrate Judge Donio. Accordingly, opposition to the Motion, a statement that no brief was necessary in opposition, or a request for an extension of time to file an opposition was required to be filed by September 7, 2015. *See* L.Civ.R. 7.1(d)(2) & (4), L.Civ.R. 6.1(a)(2). No such filing was made by either the Cooper Defendants or Young by that deadline.

On November 4, 2015, the motion was reset to be decided by this Court, but no new return date was identified. The Cooper Defendants then for the first time filed opposition to the Government's Motion for Leave on November 10, 2015—over two months after the deadline for opposition. On November 11, 2015, Young joined in the Cooper Defendants' opposition.

This constitutes the third procedural violation in the context of the pending motions as discussed in this opinion for both Young and for the Cooper Defendants. *See supra* Section IV (Young and the Cooper Defendants filing sur-replies without permission in contravention of L.Civ.R. 7.1(d)(6)); Section III.D.3 (counsel for Young filing an "affidavit" in contravention of L.Civ.R. 7.2(a) and counsel for the Cooper Defendants including opposition to the statement of material facts within a brief in contravention of L.Civ.R. 56.1(a)). This Court is permitted to "reject any brief or other paper not filed within the time specified." L.Civ.R. 7.1(d)(7); *see also Espinal v. W. Asset Mgmt., Inc.,* Civ. No. 11–5799(KSH), 2011 WL 6002887, at *1

(D.N.J. Nov. 29, 2011) (rejecting an opposition to a motion to dismiss filed 14 days after the deadline); *Rodriguez v. Hayman*, Civ. No. 08–4239 (RBK/KMW), 2009 WL 4122251, at \*4 (D.N.J. Nov. 23, 2009) (rejecting opposition to motion to dismiss due to "gross untimeliness" when filed 79 days after due, with no explanation, and with no leave to file out of time). *But see Aurite v. Morris*, Civ. No. 08–2807 (RBK/KMW), 2010 WL 234941, at \*2 (D.N.J. Jan. 15, 2010) (considering opposition to summary judgment filed 15 days after the deadline).[13]

Neither Young nor the Cooper Defendants make any attempt to explain the gross untimeliness of their opposition, nor did either seek leave to file oppositions out of time. Accordingly, this Court will exercise its discretion to disregard the opposition papers and treat the Government's Motion for Leave as unopposed. Both counsel for Young and counsel for the Cooper Defendants are hereby put on notice that further failure to comply with the Local Rules may result in sanctions for them and their clients. The Government is similarly put on notice, as mentioned in Section III.B, *supra*, for its own failure to fully comply with court orders.

Nonetheless, even if this Court were to consider the opposition of Young and the Cooper Defendants, the arguments made therein do not alter this Court's analysis and conclusion. This Court has a duty to conduct an independent analysis of the arguments presented by the Government to determine if the Government's Motion for Leave will be granted, even if the Motion is unopposed. *See Stackhouse v.*

*Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (counseling against granting summary judgment as unopposed for failure to comply with briefing rules without examining the merits); *cf. Clark v. Prudential Ins. Co. of Am.*, Civ. No. 08–6197(DRD), 2011 WL 1833355, at \*4 & n. 4 (D.N.J. May 13,2011) (noting the court's obligation to determine "good cause" in a proposed protective order, even when the parties stipulate to its entry).

## C. RULE 16 ANALYSIS

The Government seeks to amend its Answer to raise both NJCIA defenses based on (1) the fact that a subject matter jurisdiction defense can be raised at any time; and (2) the New Jersey Supreme Court's decision in *Kuchera* that was issued on March 31, 2015. (Gov't's Mot. Leave Br. at 4.) This Court has already determined that the absolute immunity provision of the NJCIA is inapplicable here in light of the expansion of "hospital purposes" for the damages cap in *Kuchera*, and thus the subject matter jurisdiction defense is no longer relevant. Therefore, the Court will only consider the Government's argument that *Kuchera* provides the necessary predicate for good cause to amend the scheduling order.

Immunity defenses under the NJCIA were always available to the Government, and have been at least since 2011 when the Third Circuit in *Lomando* held that "[t]he United States is entitled to the protection of the *immunity* the NJCIA provides because a similarly-placed private employer would be entitled to that defense and the United States' deemed employees in this

---

13. Additionally, an explanation from counsel would weigh in favor of considering the untimely papers. *See Ikelionwu v. Nash*, Civ. No. 06–625(RBK), 2008 WL 762864, at \*2 n. 1 (D.N.J. Mar. 19, 2008) (considering opposition to summary judgment where defendant wrote a letter explaining delay and it was a

"one-time occurrence"); *Chambers v. Heidelberg USA, Inc.*, Civ. No. 04–583(RBK), 2006 WL 1281308, at \*3 n. 2 (D.N.J. May 5, 2006) (considering opposition to summary judgment "in the interest of completeness" where plaintiff submitted a letter explaining the delay).

case, the individual physicians, would be entitled to that defense as well." *Lomando*, 667 F.3d at 378–79 (emphasis added). The decision of the New Jersey Supreme Court in *Kuchera* did not change that. As explained in Section III.D.2, *supra*, what the court in *Kuchera* did was narrow the scope of absolute immunity under the NJCIA while expanding the scope of the damages cap. As another court in this district that recently had the opportunity to consider this issue explained, "*Kuchera* did not make available a new defense that was previously unavailable." *Troilo v. Michner*, Civ. No. 13–2012(RMB), 2015 WL 7012743, at *3 (D.N.J. Nov. 12, 2015). Accordingly, the decision in *Kuchera* itself does not provide good cause to amend the scheduling order.

■ However, this Court finds that the Government has put forth sufficient argument to support a finding that any failure to plead the NJCIA defenses were the result of mistake excusable neglect. Following the *Kuchera* decision, the Department of Justice and the United States Attorney's Office for the District of New Jersey reassessed what the Government's analysis had been regarding the applicability of the NJCIA to FQHCs. (Pascal Decl. [Dkt. No. 98–3] ¶¶ 5–7; Gov't's Mot. Leave Br. at 12–13.) This Court finds that this course of conduct demonstrates that the failure to plead NJCIA defenses initially was due to the Government's mistaken understanding or excusable neglect in pursuing the NJCIA defense based on internal policy decisions. Such mistake or excusable neglect establishes good cause to depart from the deadlines set in the scheduling order. *Fermin*, 2012 WL 1393074, at *3. Therefore, the Government has satisfied the requirements of Rule 16(b)(4).

### D. RULE 15 ANALYSIS

Next, the Court must determine whether it would be appropriate to deny leave to amend under Rule 15 standards. Acknowledging that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(3), the Court turns to the reasons identified above for denying a motion for leave: " '(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.' " *Schumann*, 769 F.3d at 849 (quoting *Lake*, 232 F.3d at 373).

First, the Government has not demonstrated undue delay, bad faith, or dilatory motives as explained in the Rule 16 analysis in determining to permit the Government to amend the scheduling order. Second, the amendment as to the damages cap would not be futile; however, the amendment as to absolute immunity would be. This Court has already determined to deny the motion to dismiss based on absolute immunity, so the Government's Motion for Leave to Amend to assert absolute immunity in the answer will be denied. Finally, as to the third consideration, there will be no prejudice to Young and the Cooper Defendants in permitting the Government to assert the damages cap of the NJCIA as a defense, because as already explained in Section III.D.3, *supra*, the Court will grant leave to reopen discovery for a limited amount of time for the explicit purpose of determining the applicability of this defense.

Accordingly, the Court will grant the Government's Motion for Leave to permit amending the Answer to assert the damages cap under the NJCIA, but will deny the Motion for Leave with respect to asserting absolute immunity under the NJCIA.

### VI. CONCLUSION

For the foregoing reasons, the Government's Initial Motion will be denied with

prejudice as to whether absolute immunity applies under the NJCIA, but denied without prejudice as to whether the Government qualifies for the damages cap of the NJCIA. Accordingly, the Government's Motion for Leave is granted-in-part to permit amending the Answer to assert the defense for the damages cap under the NJCIA, and discovery is reopened for forty-five (45) days only on the limited issues of whether CAMcare qualifies for the damages cap under the NJCIA. The Government's Motion for Leave is otherwise denied, and no defense of absolute immunity under the NJCIA may be asserted. Finally, the Government's Motion to Strike will be granted, and the sur-replies of Young and the Cooper Defendants will be disregarded. An appropriate order accompanies this opinion.

## ORDER

### [Dkt. Nos. 81, 96, 98]

This matter having appeared before the Court upon the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction or Alternatively, for Summary Judgment [Dkt. No. 81]; the Government's Motion to Strike Plaintiff's and the Cooper Defendants' Sur–Replies [Dkt. No. 96]; and the Government's Motion for Leave to Amend its Answer Out of Time [Dkt. No. 98]; and the Court having reviewed the parties' submissions; for the reasons set forth in an Opinion on even date herewith; and for good cause appearing:

IT **IS** on this *2nd* day of December, 2015,

**ORDERED THAT:**

(1) The Government's Motion to Dismiss is **DENIED WITH PREJUDICE** with respect to the absolute immunity defense under the New Jersey Charitable Immunities Act (the "NJCIA"), but **DENIED WITHOUT PREJUDICE** with respect to the applicability of the damages cap under the NJCIA;

(2) The Government's Motion to Strike is **GRANTED**; and

(3) The Government's Motion for Leave is **GRANTED–IN–PART** with respect to being permitted to amend the Government's Answer to assert the damages cap defense under the NJCIA, and **DENIED** in all other respects.

**IT IS FURTHER ORDERED THAT:**

(1) Discovery is **REOPENED** for the limited purpose of allowing Young and the Cooper Defendants to obtain information related to the damages cap defense;

(2) The period for this discovery shall be forty-five (45) days only, and may be extended only upon a heightened showing of good cause. Within seven (7) days thereafter, the Government may file a renewed motion for summary judgment on the issue of the damages cap under the NJCIA. Any opposition to this motion will be due fourteen (14) days thereafter, and any reply will be due within seven (7) days of any opposition being filed; and

(3) Any disputes concerning the scope or method of discovery are hereby **REFERRED** and shall be presented before the Honorable Ann Marie Donio, pursuant to Local Civil Rule 37.1(a).